In re the DUPLAN CORPORATION, Debtor.

REALTIES 1430, A Partnership, Objectant,

v.

Alfred P. SLANER, as Reorganization Trustee of the Duplan Corporation, Respondent.

Reorganization Nos. 76 B 1967, 76 B 1968 (KTD).

United States District Court, S. D. New York.

July 1, 1979.

Battle, Fowler, Jaffin, Pierce & Kheel, New York City, for Realties 1430; Lawrence Mittman, New York City, of counsel.

# 1090

Shea, Gould, Climenko & Casey, New York City, for Reorganization Trustee; Martin I. Shelton, Judith L. Spanier, New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for Robert A. Levinson, and Stephen Gottdiener; William W. Golub, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

In this proceeding Realties 1430, the objectant, [hereinafter referred to as "Realties"] attempts to block the assignment by the debtor, The Duplan Corporation, of a lease covering the fourteenth floor of 1430 Broadway in New York City.

The Duplan Corporation originally filed a petition under Chapter XI of the Bankruptcy Act on August 31, 1976. Thereafter, on October 5, 1976, an order was entered directing that the case proceed under Chapter X of the Act and on October 6, 1976, I appointed Alfred P. Slaner as Trustee in the reorganization of Duplan. As part of the reorganization, the Trustee has been disposing of certain subsidiaries of the debtor. One such subsidiary, Andrex Industries Corp., [hereinafter referred to as "Andrex"] was sold at auction on June 7, 1979 to Messrs. Levinson and Gottdiener. In connection with this sale, Duplan attempted to assign the lease covering the premises presently occupied by Andrex on the fourteenth floor of 1430 Broadway. Realties objected to the assignment and has also moved for an order declaring that the lease be terminated and that Duplan surrender the premises. In the alternative Realties seeks an order declaring Andrex to be an unacceptable tenant. The Trustee has cross-moved for an order declaring the lease to be in full force and effect and seeks Court approval of the proposed assignment and concomitant assumption. A hearing was held on June 20, 1979. The following shall constitute my findings of fact and conclusions of law.

At all relevant times Andrex was a wholly-owned subsidiary of Duplan. In June and September 1976, both Duplan and Andrex entered into separate leases covering certain commercial space located at 1430 Broadway in New York City. The then landlord, 1430 Equities, Inc., leased the entire nineteenth floor of 1430 to Andrex for a term of ten years at an annual rental of $81,000,000. The lease with Duplan covers the entire fourteenth floor of 1430 and also runs for a ten-year period at an annual rental of $113,400. Thereafter, in April of 1978, the corporate landlord was adjudicated a bankrupt and the building was operated by the Trustee in Bankruptcy, Richard Lieb, until March 1979 when 1430 Broadway was sold to Realties 1430. In August of 1978, Andrex entered into a lease termination agreement with the Trustee of 1430 whereby Andrex's lease covering the nineteenth floor was terminated. Ten months prior to this formal termination agreement, however, Andrex had moved its operations to the fourteenth floor and has at all times since this move operated from the fourteenth floor of 1430.

Having sold the stock of Andrex, Duplan now seeks to assign the commercial lease covering the fourteenth floor to the purchasers of Andrex. The landlord objects and argues that by permitting Andrex to occupy the fourteenth floor without first obtaining the express written consent of the landlord, the lease has been breached and is thereby terminated. Thus, the landlord urges that Duplan has nothing to assign. Alternatively, the landlord argues that even if the lease is not terminated, to permit Andrex to assume the lease would cause it irreparable harm. In particular, Realties 1430 argues that Andrex is a financially irresponsible tenant and such a tenant should not be foisted upon the landlord. I find neither argument compelling and hold that the lease in issue may be assigned to and assumed by Andrex.

The lease provides:

Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, ex-

pressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Landlord in each instance. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Landlord to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Landlord to any further assignment or underletting.

Trustee's Exhibit 2 at ¶ 11.

It further provides that:

(1) If Tenant defaults in fulfilling any of the covenants of this lease . . . upon Landlord serving a written five (5) days notice upon Tenant specifying the nature of said default and upon the expiration of said five (5) days, if .Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said five (5) day period, and if Tenant shall not have diligently commenced curing such default within such five (5) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Landlord may serve a written three (3) days' notice of cancellation of this lease upon Tenant, and upon the expiration of said three (3) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such three (3) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Landlord but Tenant shall remain liable as hereinafter provided.

It is clear that at no time (either before or after the occupation of the fourteenth floor by Andrex) did Duplan ever obtain the written consent of 1430 Equities, the Trustee Richard Lieb or Realties 1430 authorizing the Andrex move. It is also clear that by letters dated April 20 and May 10, 1979, Realties 1430 notified Duplan that it was in breach and the landlord had elected to terminate the lease pursuant to ¶ 17 thereof.

It would appear, therefore, that under the literal terms of the lease agreement, Duplan was in breach and the landlord properly entitled to possession of the premises. Duplan charges, however, that by letter dated August 31, 1977 the landlord had actual notice of Andrex's move from the nineteenth to the fourteenth floor. In addition, Duplan asserts that quite apart from the letter, the Andrex move was so open and notorious that the landlord could not help but to have had actual notice of the move. Duplan argues that the landlord's conduct, knowingly accepting rent while never objecting to the move prior to the instant assignment, constituted a waiver of the covenant in issue. Duplan concludes that in light of this waiver the landlord cannot now attempt to employ the forfeiture provision to terminate the lease.

As a general rule, courts do not look favorably upon the use of forfeiture clauses in leases. *Finn v. Meighan*, 325 U.S. 300, 301, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945). Accordingly, upon a breach courts will deem a forfeiture provision waived when by his conduct a landlord evinces "an intent to treat the lease as continuing rather than as terminated." *BJM Realty Corp. v. Riggieri*, 326 F.2d 281, 282 (2d Cir. 1964). This intent to waive the benefits of a forfeiture clause is most often inferred from the acceptance of rent which accrues after the lessees breach. *Id.* at 283 and cases cited therein.

This is true even where the lease, as in the case at bar, expressly provides that the acceptance of rent after the breach does not constitute a waiver of the forfeiture provision. *Geraghty v. Kiamie Fifth Avenue Corp.,* 210 F.2d 95 (2d Cir. 1954). It is, in the final analysis, a question of intent.

Realties argues that it did not become aware of the Andrex move until April, 1979 at which time it promptly notified Duplan of the breach and its intent to terminate the lease. It concludes, therefore, that its conduct prior to the actual notice of the Andrex move is legally irrelevant in establishing a waiver of the forfeiture clause. Moreover, its conduct upon receiving actual notice of the Andrex occupation clearly evinces its intent to enforce the forfeiture provision.

In support of its position, Realties 1430 offered the testimony of Arnold Steinberg and Richard Lieb. Mr. Steinberg is presently a general partner in Realties 1430 and is also a partner in Steinberg & Pokoik which has acted as the managing agent on behalf of Equities 1430 and Richard Lieb, and is presently performing the same service for Realties 1430. In addition, Mr. Steinberg was one of the principals in Realties' predecessor—1430 Equities, Inc. Mr. Steinberg testified that he first learned of Andrex's occupation of the fourteenth floor in April of 1979. I find his testimony to be totally incredible. The uncontroverted evidence was that the building directory at 1430 as well as the elevator name plaques both reflected the Andrex move as early as October 1977. Steinberg attempted to explain away this evidence by stating that the building superintendent had the authority to change the building directory and elevator plaques without first receiving a directive from the landlord or even checking with the landlord to confirm that the changes were proper. Apparently, Steinberg's testimony was that if a tenant requested a change in the directory and elevator plaque to reflect an internal move from one floor to another, the superintendent was authorized to implement the requested changes. Steinberg also testified that while he often visited the premises at 1430 after October 1977 he never noticed any changes in the elevator plaque or the building directory. He also denied any knowledge of the large display case and corporate sign just opposite the elevator bank on the fourteenth floor which identified Andrex as the corporate entity occupying that space. Steinberg also denied any knowledge of the movement of any of Andrex's furniture by the building superintendent from the nineteenth to the fourteenth floor in October–November 1977 although he could not explain the movement. He merely stated that the superintendent had the authority to move furniture from one floor to another apparently without first obtaining permission from the landlord. Finally, Steinberg denied ever receiving the letter, dated August 31, 1977 and addressed to him, which notified him of Andrex's intent to move from the nineteenth floor to the fourteenth floor. The letter also requests his assistance in finding a new tenant for the nineteenth floor and contemplates the execution of a lease termination agreement covering the nineteenth floor. Trustee's Exhibit 3.

Richard Lieb, who executed the lease termination agreement with Andrex as Trustee for the estate of 1430 Equities, professed no knowledge of Andrex's move to the fourteenth floor. He persisted in his testimony even when confronted with the lease termination agreement, executed in August 1978, which identifies Andrex as a corporation with offices at 1430 Broadway and further directs that all future notices with respect to the termination shall be sent to Andrex's offices at 1430 Broadway. Trustee's Exhibit 9. I find that in light of this language, it would appear that Mr. Lieb knew that even after the termination of the lease covering the nineteenth floor Andrex was going to continue to occupy space at 1430 Broadway. Moreover, Lieb admitted using Steinberg & Pokoik as managing agents for 1430 for at least part of the time he operated the building as Trustee. Since the managing agents were aware of Andrex's occupation of the fourteenth floor (Trustee's Exhibit 3), I find this knowledge to be attributable to the Trustee as well.

Thus, I reject as incredible the testimony of Arnold Steinberg that Realties 1430 first learned of the Andrex move in April, 1979. I find that Steinberg & Pokoik, as managing agents, and Equities 1430, as landlord, had actual knowledge of the Andrex move as of September 1977. In addition, I find that Realties 1430, as successor landlord, had actual knowledge of the Andrex move from the time it purchased 1430 from the Trustee for Equities 1430. I also find that Richard Lieb may be charged with knowledge of the Andrex move during his tenure as Trustee for 1430 Equities. Moreover, the successive landlords of 1430 Broadway, 1430 Equities, Richard Lieb and Realties 1430, by accepting, without objection, rent for the fourteenth floor which accrued after they had actual knowledge of its occupation by Andrex evidenced an intent to waive the forfeiture provisions of the lease.

Turning to the desirability of Andrex as a tenant, I find that under all the circumstances Andrex has shown itself to be fiscally sound and capable of meeting its future obligations under the lease. Indeed, all indications are that Andrex's profits for the first quarter of 1979 together with its projected profits for the entire year, show it to be a profitable operation. Moreover, the SEC in projecting Andrex's profits for fiscal 1979 estimated that they would be approximately $1.5 million. While the Trustee places these profits at $1 million, the clear import of this testimony is that the consensus of those with an intimate knowledge of the Andrex operation see it as a profitable enterprise now and in the future. I am not unaware of the fact that for the past three years Andrex has shown an operating loss, however, I simply find that the present financial status of Andrex is more probative of its present ability to act as a financially sound tenant. Moreover, Andrex's present financial status in conjunction with the favorable projections of the Trustee, Alfred P. Slaner, and the Securities and Exchange Commission convinces me that Andrex is a financially sound and desirable tenant. It may be that the product line of Andrex is subject to the volatile whims of fashion, but the chances here are not necessarily greater than that of any corporation caught up in the gyrations of the economy.

Accordingly, Realties 1430's motion to have the lease in issue declared terminated is denied as is its objections to the assignment of the lease to Andrex. In addition, the Trustee is hereby authorized to assign the lease for the fourteenth floor of 1430 Broadway to Andrex in connection with the sale of the Andrex stock to Messrs. Levinson and Gottdiener.

SO ORDERED.