323 F.2d 894
 Lester M. ENTIN and Joseph Waters, doing business as Lester
M. Entin Associates, Appellants,
v.
John C. STEVENS, Trustee for G.F.E. Industries, Inc.,
Debtor, and Securities and Exchange Commission, Appellees.
 No. 17342.
 United States Court of Appeals Eighth Circuit.
 Oct. 30, 1963.
 
 Xen Q. Lindel, Des Moines, Iowa, for appellants; C. Glenn Garten and William B. Garten, Des Moines, Iowa, on the brief.
 John H. Neiman, Des Moines, Iows, for appellee John C. Stevens, trustee.
 J. Kirk Windle, Sp. Counsel, Chicago, Ill., for Securities & Exchange Commission; Thomas B. .hart, Regional Adm'r, Martin Jacobson, Atty., Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Associate Gen. Counsel, and Dolph B. H. Simon, Atty., S.E.C., Washington, D.C., on the brief.
 Before SANBORN and MATTHES, Circuit Judges, and ROBINSON, District judge.
 SANBORN, Circuit Judge.
 
 
 1
 This is an appeal by the owners and lessors of the premises known as 200 Entin Road, Clifton, New Jersey, from orders entered in a voluntary proceeding for the reorganization of G.F.E. Industries, Inc., under Chapter X of the Bankruptcy Act, as amended, 11 U.S.C. 501 et seq. The orders complained of enjoined the appellants from cancelling the lease of the premises to the debtor, and authorized John C. Stevens, the reorganization trustee, to sell the division of the debtor known as Private Brands, which occupied the leased property, and to assign the lease in suit to the purchaser.
 
 
 2
 The Securities and Exchange Commission, pursuant to 208 of the Bankruptcy Act as amended, 11 U.S.C. 608, entered its appearance on December 14, 1962, in the proceeding, became a party, and is an appellee.
 
 
 3
 The debtor filed its petition on September 19, 1962, asserting its inability 'to meet its debts as they mature' and its desire to effect a plan of reorganization under Chapter X. A financial statement as of July 31, 1962, accompanying the petition, showed assets of $4,706,000 and liabilities of $4,647,000. The petition was approved by the court on September 20, 1962, and John C. Stevens was appointed trustee of the debtor to take charge of its affairs and property and to operate its business. The order appointing the trustee contained the usual injunction against any interference with the custody, possession, use and enjoyment by him of the properties, assets and business of the debtor, and reserved to the court the right to supplement the order.
 
 
 4
 The premises occupied by the Private Brands Division of the debtor in Clifton, New Jersey, had been leased to the debtor by the appellants on November 28, 1960, for 20 years at a rental of $120,000 per year, payable monthly, plus taxes, with an option to renew for another 15 years. The appellants, in an option agreement with Francis P. Carey, dated October 27, 1960, had agreed to purchase the land, to build a building, and to lease the land and building to W.P.C. Enterprises, Inc. (now G.R.E. Industries, Inc., the debtor). The lease contained the following provisions:
 
 
 5
 'Article 10, Section 3. Lessee shall not assign this agreement or under-let or underlease the premises, or any part thereof, except with the written consent of the lessor, which consent shall not be unreasonably withheld. * * *
 
 
 6
 'Article 11, Section 2B. It is expressly understood and agreed that * * * if Lessee shall file a petition in bankruptcy, or for arrangement, or be adjudicated a bankrupt, or make an arrangement for the benefit of creditors, or take advantage of any insolvency act, lessor, if lessor so elects, at any time thereafter, may terminate this lease and the term thereof, upon giving to lessee 20 days notice in writing of lessor's intention so to do, and upon the giving of such notice, this lease and the term thereof shall terminate, expire and come to an end on the date fixed in such notice as if said date were the date originally fixed in this lease for the termination or expiration thereof.'
 
 
 7
 The court on Cotober 2, 1962, upon application of the trustee, made an order approving the subleasing, by the trustee, of the Private Brands Division of the debtor, for the consideration of 5% Of gross sales, to Harold Levy, agent for a then undisclosed principal, who it later developed was Francis P. Carey. The record shows that Carey was a guarantor of the original lease of the premises occupied by Private Brands. During October 1962 he paid to the appellants.$19,000 to cover arrearages of rent and taxes. The receipt of this payment was acknowledged on behalf of appellants by a letter of Greenburg, Wilensky & Feinberg, their counsel.[1]
 
 
 8
 The trustee, on December 5, 1962, filed his application with the court for authority to sell the Private Brands Division of the debtor, temporarily subleased to F.P.C.'s Private Brands, Inc. The hearing on this application was set for December 14, 1962, before Richard Stageman, the Referee in Bankruptcy, acting as a special master.
 
 
 9
 On December 13, 1962, the appellants sent a telegram to each of the following: John C. Stevens, Trustee; the Honorable Roy L. Stephenson, United States District Judge; and the 'Occupant' of the premises. The telegram read as follows:
 
 
 10
 'Dear Sir. Undersigned, owner of premises located at 200 Entin Rd Clifton New Jersey, Hereby cancels and terminates rights of tenants under lease dated Nov. 28/1960 between Lester M Entin Associates, and WPC Enterprises Inc, and others, by reason of defaults under terms of lease. We request that prospective purchasers by advised of our position at the time of sale to be held Dec 14 1962 at 330 PM. Central Standard Time, at United States Court House Des Moines Iowa.
 
 
 11
 Very Truly Yours. 'Lester M Entin Associates '30 Howe Ave Passaic NJ'
 
 
 12
 The trustee, on December 19, 1962, filed an application to have the appellants temporarily restrained from cancelling or forfeiting the lease in suit and from interfering in any way with the trustee's possession of the leased premises. Judge Stephenson granted an injunction or restraining order forthwith, and entered an order directing the appellants to show cause on January 25, 1963, why the injunction should not be made permanent.
 
 
 13
 The hearing on the trustee's application to sell the Private Brands Division of the debtor was held by the Referee, as special master, on December 14, 1962. On December 17 he filed his report, recommending that the proposed sale be approved and that the appellants be enjoined from interfering with the debtor's use and enjoyment of the leased premises and from attempting to cancel or forfeit the lease in suit.
 
 
 14
 The trustee, on December 26, 1962, filed a statement concerning executory contracts and unexpired leases of the debtor. In this statement he reported that on September 22, 1962, he had assumed the unexpired portion of the lease from 'Lester M. Entin Associates.'
 
 
 15
 A motion, filed on January 25, 1963, by the appellants to dissolve the restraining order or temporary injunction issued by the court on December 19, 1962, was heard on January 25, 1963, together with the order directing the appellants to show cause why the restraint imposed on them should not be made permanent, and the application of the trustee for approval and confirmation of the sale to F.P.C.'s Private Brands, Inc., of the Private Brands Division of the debtor. Testimony was introduced at the hearing, which need not be discussed in detail. It showed that the appellants knew of the Chapter X proceeding a few days after the petition was filed on September 19, 1962, and knew also of the temporary sublease of the premises by the trustee, and of his proposed sale of the Private Brands Division and assignment of the lease in suit. The testimony showed that there had been numerous discussions between the appellants, the trustee, his counsel, Francis P. Carey, and his counsel, regarding the payment of rentals called for by the lease, the proposed disposition of the debtor's interest in the Private Brands Division, and whether appellants would consent to or would oppose an assignment of the lease in connection with the contemplated sale to Francis P. Carey (F.P. C.'s Private Brands, Inc.).
 
 
 16
 While the appellant Entin in his deposition testified that he had never consented to any assignment or subletting of the lease in suit, the trustee Stevens' testimony was that on November 12 or 13, 1962, he had advised Entin of the proposal made by Carey to purchase the Private Brands Division, conditioned upon the assignment of the lease to him; that Stevens asked Entin if he would consent or agree to the proposed assignment, and that 'He had no objection to the assignment of the lease to Mr. Carey at that time.'
 
 
 17
 According to Entin's testimony, all monthly amounts due the appellants under the lease had been paid in full; so concededly there was no default in that regard. Entin also testified that there was no mention by him of offering to return to the debtor the $50,000 which it had deposited with the appellants, under the terms of the lease, as security for its performance. In answer to the question, 'Are you objecting, generally, to an assignment of this lease by the trustee to anyone?', Entin's answer was, 'We claim that the lease is in default and therefore there the lease is in default and therefore what the basis of the default was, he responded: 'That is a matter of law which I am not competent to answer, but the documents should specifically answer for themselves.'
 
 
 18
 The testimony of Harold Levy, the attorney who represented Francis P. Carey individually and F.P.C.'s Private Brands, Inc., the proposed purchaser of the Private Brands Division, was, in substance, that he had conferred with Entin concerning the lease on many occasions, commencing the week of September 24, 1962; that he (Levy) told Entin that F.P.C.'s Private Brands, Inc., had subleased the premises from the trustee, that Levy's clients were assuming all obligations under the original lease in suit, would pay the rent, and that the arrangement had been made in order to keep the business operating until a formal offer could be made to the trustee; that Entin said 'we have done a good job and not to worry, to go ahead and make your offer to the Court and there wouldn't be any problem in the matter'; that no objections were raised by Entin; that the only thing he wanted to know at that time was who would pay the rent in arrears on September 1, 1962; and that Levy advised him that Carey would pay that under his personal guarantee of the lease.
 
 
 19
 Levy gave the following testimony relative to a meeting he had with the appellants within two weeks after Thanksgiving 1962:
 
 
 20
 'A. Well, the substance of the conversation was that he (apparently Entin) congratulated us for getting the offer through the court. He said he had no objection to working along with us if certain things were done. He said he wouldn't accept Frank P. Carey or the corporation on any assignment unless-- and then he proceeded to describe the 'unless'. As a quid pro quo for the assignment he wanted us to give him approximately five acres of ground worth $200,000.00, for no consideration whatsoever. He requested at that meeting that if I would go over to the attorney's office and then and there make up the papers on behalf of my client, that he would notify the Trustee immediately that the assignment was acceptable to Entin and Associates.'
 
 
 21
 Levy testified that the appellants stated at this meeting that they were not 'interested in the financial condition' of Carey or F.P.C.'s Private Brands, and that 'If Mr. Carey would agree to releasing these five acres of ground to them, there would be no problem about them whatsoever accepting an assignment of the existing lease.'
 
 
 22
 The appellants' offer to barter their consent to the assignment of the lease to Carey for the release by him of the five acres of the leased premises was rejected.
 
 
 23
 On March 1, 1963, the court entered an order authorizing the sale of the Private Brands Division and staying cancellation of the lease in suit. The order was based upon the court's determination that whatever rights the appellants may have had initially to elect to terminate the lease because of the Chapter X proceeding for the reorganization of the debtor and because of their withholding of their consent to the assignment of the lease, they had, by their acts and conduct, waived. After stating the pertinent facts in adequate detail, Judge Stephenson in his order said:
 
 
 24
 '* * * The facts, as set out above, show us that the lessor was aware of the status of the debtor at all times and was informed of intended plans as they developed. To these plans the lessor apparently consented until the telegram of December 13, 1962, the day before the referee's hearing on the proposed sale, in which the lessor gave notice of his intention to cancel the lease. Prior to this the lessor had accepted each month's rental payments without reservation. It further appears that the actions of Lester M. Entin Associates at this time is to gain a superior bargaining position with respect to the lease in question. The Court finds that under all of the circumstances the lessor had waived the right he may have had to cancel the lease.
 
 
 25
 'IT IS ORDERED that the recommended Order authorizing sale of Private Brands Division and Order Granting Stay previously filed herein on December 17, 1962 is incorporated herein and made a part hereof as fully as if set out herein.'
 
 
 26
 The Judge also determined (by supplemental order of March 28, 1963) that the appellants 'would be unreasonable if they withheld their consent to the assignment of the lease to FPC's Private Brands, Inc., and that in view of all of the circumstances, John C. Stevens, Trustee, can assign to FPC's Private Brands, Inc., the lease with Lester M. Entin Associates.'
 
 
 27
 The sale of the Private Brands Division of the debtor and assignment of the lease in suit to F.P.C.'s Private Brands, Inc., was approved by the court's order of March 4, 1963, adn the appellants were enjoined from bringing or continuing any action against the debtor attempting to cancel the lease and from interfering with the debtor's use and enjoyment of the leased premises.
 
 
 28
 On this appeal it is argued for the appellants that the bankruptcy court erred (1) in refusing to dissolve the injunction against forfeiture of the lease; (2) in failing to rule that the trustee's failure to assume the lease within 60 days after approval of the debtor's petition for reorganization under Chapter X constituted as a matter of law a rejection of the lease; (3) in failing to find that the filing of the petition by the debtor was a default under the lease and gave the appellants a right to forfeit the lease; and (4) in ruling that appellants had waived their right to forfeit the lease.
 
 
 29
 Whether the court observed the necessary procedural formalities in entering the ex parte order of December 19, 1962, restraining the appellants from forfeiting the lease, we think need not be discussed or decided on this appeal, in view of the hearing accorded the appellants on their motion to dissolve the restraining order. The granting of the permanent injunction after notice and hearing, we think renders moot the question whether all procedural requirements were met in connection with the entry of the temporary restraining order. And it is to be remembered that the judge in a Chapter X proceeding has the duty and responsibility of protecting the assets of the insolvent estate against loss or impairment.
 
 
 30
 It is contended by the appellants that there was a rejection of the lease as of the date the petition for reorganization was filed, by virtue of Section 70, sub. b,[2] of the Bankruptcy Act, as amended, 11 U.S.C. 110, sub. b. In support of this contention the appellants rely heavily on the holding of this Court in Wiemeyer v. Koch, 8 Cir. (1945), 152 F.2d 230, 234, that where no affirmative action by a reorganization trustee in a Chapter X proceeding was taken within the 60 days prescribed by Section 70, sub. b, to adopt or reject a lease, the statutory presumption of rejection was conclusive.
 
 
 31
 The same question again arose in the case of Ten-Six Olive, Inc. v. Curby, 8 Cir. (1953), 208 F.2d 117. This Court there held that the right accorded a lessor by Section 70, sub. b, being for the lessor's benefit, was as much subject to waiver as was the right to terminate given by the provisions of the lease. This Court said (pages 123-124 of 208 F.2d):
 
 
 32
 '* * * We can see no reason why the lessor may not * * * waive the right accorded him by the terms of this statute. It is undisputed in the record that appellant indicated by its acts and conduct that it considered the lease to be in full force and effect long after the petition for reorganization was filed. * * * Since appellant did not want to treat the lease as having been terminated either by its terms or by the bankruptcy statute, but chose to acknowledge the continued existence of it, it must be deemed to have waived its right to have it terminated and to have become bound by its course of conduct.'
 
 
 33
 We note that Judge Gardner, who wrote the opinion in the Wiemeyer case, concurred in the Ten-Six Olive opinion.
 
 
 34
 The Securities and Exchange Commission liquidation of the assets of the bankrupt provision of Section 70, sub. b, while applicable to an ordinary bankruptcy, proceeding, the purpose of which is liquidation of the assest of the bankrupt for distribution to creditors, is inapplicable to Chapter X proceedings, the purpose of which is rehabilitation of the debtor and, if possible, the debtor's preservation as a going concern. In Title Insurance & Guaranty Co. v. Hart, 9 Cir., 160 F.2d 961, 966, certiorari denied 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347, it was held 'that the assumption, rejection, and automatic rejection provisions of 70, sub. b are inconsistent with and inapplicable to Chapter X reorganization proceedings.' See also: In re Childs Co. (D.C., S.D.N.Y.), 64 F.Supp. 282, 286; In re M & S Amustement Enterprises, Inc. (D.C., D. Delaware), 122 F.Supp. 364; 11 Remington on Bankruptcy, 4394. Compare, In re Chase Commissary Corporation (D.C., S.D.N.Y.), 11 F.Supp. 288.
 
 
 35
 Whether the automatic rejection provision of Section 70, sub. b, is invariably inapplicable to Chapter X proceedings, we need not decide. We are satisfied that, under the circumstances of this case, the failure of the trustee to expressly assume the lease in suit within the time prescribed by that section did not terminate the lease nor preclude Judge Stephenson from ruling, as he did, that any statutory right acquired by the appellants to treat the lease as rejected they had waived by their conduct.
 
 
 36
 Judge Stephenson's orders of which the appellants complain, were not based upon a ruling that the provision of the lease giving them a right to elect to terminate it if the lessee should file a petition in bankruptcy or take advantage of any insolvency act was not enforceable. The orders were based solely upon a determination that the appellants by their acts and conduct subsequent to the filing of the petition for reorganization under Chapter X had waived their right to terminate the lease.
 
 
 37
 Under the teachings of the Seventh Circuit in In re Sound, Inc., 171 F.2d 253 (certiorari denied, Atwell Building Corp. v. Sound, Inc., 336 U.S. 962, 69 S.Ct. 892, 93 L.Ed. 1114), and of this Court in Ten-Six Olive, Inc. v. Curby, supra, pages 123-124 of 208 F.2d, we think Judge Stephenson did not err in entering the orders which are challenged by the appellants.
 
 
 38
 The orders appealed from are affirmed.
 
 
 
 [1]
 'October 5, 1962
 'Mr. Frank Carey
 'c/o Private Brands
 'Entin Road
 'Clifton, New Jersey
 'Re: Lester M. Entin Associates
 'Dear Frank:
 'Lester M. Entin Associates does hereby acknowledge receipt of the sum of.$19,000 to be applied on account of arrearages of taxes and rent.
 'Of course the Landlord does not expect to receive payment twice for the same indebtedness.
 'This letter is written without prejudice to any rights or claims which the Landlord may have in this matter and the acceptance of payments on account shall not be considered as a waiver of any of these rights.'
 
 
 [2]
 Sec. 70, sub. b, provides in part as follows:
 'The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time shall be deemed to be rejected. If a trustee is not appointed, any such contract or lease shall be deemed to be rejected within thirty days after the date of the order directing that a trustee be not appointed. A trustee shall file, within sixty days after adjudication or within thirty days after he has qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee. * * * A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same; but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same is enforcible. * * *'