In re RE–TRAC
CORPORATION, Debtor.

Bankruptcy No. 4–85–1433 (M–1).

United States Bankruptcy Court,
D. Minnesota.

April 7, 1986.

Dennis M. Ryan, Minneapolis, Minn., for movant.

Larry B. Ricke, Minneapolis, Minn., for debtor.

## ORDER GRANTING TERMINATION OF AUTOMATIC STAY

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for final hearing on March 7, 1986, on the Motion for Surrender of Nonresidential Real Property or Termination of the Automatic Stay filed by Wickes Manufacturing Company and on the Motion to Approve Assumption of an Executory Lease of Nonresidential Real Property filed by Re-Trac Corporation (Debtor). Wickes was represented by Dennis M. Ryan. The Debtor was represented by Larry B. Ricke. Based upon the evidence, testimony, memorandum and argu-

ment of counsel, and all of the files and records, I make the following:

## MEMORANDUM ORDER

Pursuant to 11 U.S.C. § 365(d)(4), Wickes seeks to have the Debtor immediately surrender certain leased premises, or, in the alternative, have the automatic stay of 11 U.S.C. § 362(a) modified so as to permit Wickes to take action to evict the Debtor from the premises. The Debtor seeks approval of its assumption of the lease for the same premises pursuant to 11 U.S.C. § 365(a). The Bankruptcy Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a) and Local Bankruptcy Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

## FINDINGS OF FACT

1. The Debtor is a Minnesota corporation engaged in the manufacture and sale of truck mirrors, with corporate offices in Minneapolis, Minnesota, and a manufacturing facility in Glasgow, Kentucky.

2. On August 14, 1984, the Debtor entered into a sublease of certain real property with Gulf & Western Manufacturing Company as sublessor, and the Debtor as sublessee. The Sublease related to approximately 35,400 square feet in a commercial building located at 1115 Cleveland Avenue, Glasgow, Kentucky (the Leased Premises). Gulf & Western was the lessee of the entire building pursuant to a lease from Central Glasgow Corporation.

3. The Sublease commenced on November 1, 1984, and ran through September 30, 1987. Under the Sublease, the Debtor had the option to renew for an additional term from October 1, 1987, the November 29, 1990, by giving notice to Gulf & Western. For the period November 1984, to September 1985, rent was set at $5,310.

4. In January 1985, the Debtor physically moved its manufacturing operations from Minneapolis, Minnesota to the Leased Premises and began operations there. The Debtor claims that the expenses incurred in this move were a significant factor in its filing for protection under Chapter 11.

5. In March 1985, the Debtor and Gulf & Western entered into an amendment to the Sublease (Amendment) which gave the Debtor an additional 19,000 square feet in the Leased Premises. The Amendment was for the same term and renewal period as the Sublease. Commencing May 1, 1985, through September 30, 1985, rental payments were increased to $8,160. From October 1, 1985, to September 30, 1987, rental payments were to be $8,613.33 per month. Upon execution of the Amendment, the Debtor was required to deliver a security deposit of $2,850 to Gulf & Western, with an additional security deposit of $453.33 due on October 1, 1985.

6. On July 23, 1985, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, District of Minnesota, and is presently operating as debtor in possession.

7. The Debtor has remained in possession of the Leased Premises from July 23, 1985. The Debtor did not file on or before September 22, 1985, a motion to approve assumption of the Sublease and the Amendment under 11 U.S.C. § 365(a), nor did the Debtor seek to extend the period to assume or reject the Sublease as allowed under 11 U.S.C. § 365(d)(4).

8. No rent was tendered by the Debtor to Gulf & Western in July 1985. Three checks in the amount of $8,310 were tendered by the Debtor and deposited by Gulf & Western on the following dates: Check dated August 5, 1985, deposited August 16, 1985; check dated October 31, 1985, deposited November 13, 1985; check dated December 11, 1985, deposited December 18, 1985.

9. Wickes is presently holding two checks from the Debtor: one dated January 10, 1986, in the amount of $17,226.66, and denominated "Dec. & Jan. rent"; and the other dated February 7, 1986, in the amount of $8,613.33, denominated "Rent payment for February." Additionally, the

Debtor has tendered a rent check for March 1986.

10. Subsequent to the filing of the Chapter 11 petition, the Debtor's Chief Executive Officer, Patrick Jacobs, had a telephone conversation with John Rose of Gulf & Western. In that conversation, the Debtor informed Rose that the Debtor intended to continue to operate out of the Leased Premises. There was, however, no mention of assuming the Sublease.

11. On September 12, 1985, Gulf & Western was renamed Wickes Manufacturing Company after the Wickes Companies, Inc. acquired Gulf & Western from its parent corporation.

12. Wickes sent a letter dated January 16, 1986, demanding that the Debtor vacate and surrender the Leased Premises since the Debtor had failed to assume the Sublease within 60 days of filing its petition under Chapter 11 as required by 11 U.S.C. § 365(d)(4).

13. The security deposit of $2,850 due May 1, 1985, under the Amendment has not been made. The additional security deposit of $453.33 due October 1, 1985, has also not been made by the Debtor.

14. Responsibility for certain utility charges totaling $4,231.10 from the period November 1, 1984, to April 1, 1985, is disputed between Wickes and the Debtor.

## DISCUSSION

Wickes alleges that because the Debtor did not file a motion to assume the Sublease, or file a motion requesting an extension of time prior to September 21, 1985, the Sublease is deemed rejected by operation of law under 11 U.S.C. § 365(d)(4). Section 365(d)(4) of the Code, which was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (The 1984 Amendments), provides that:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor was the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4) (1985).

The reference to the duty of the trustee specifically applies to a debtor in possession by virtue of 11 U.S.C. § 1107(a). The "date of the order for relief" is the date on which the debtor files a petition for relief, 11 U.S.C. § 301. Applying the requirements of § 365(d)(4) to this case, the issue is whether the Debtor assumed the Sublease prior to September 21, 1985.

## ASSUMPTION

Some courts have held that for a debtor to assume a lease under § 365(d)(4) the debtor must both file a motion for assumption of the lease and receive court approval within the 60-day period. *See, In re Southwest Aircraft Services, Inc.*, 53 B.R. 805 (Bktcy.C.D.Cal.1985); *In re By-Rite Distributing, Inc.*, 47 B.R. 660 (Bktcy. D.Utah 1985). That interpretation of § 365(d)(4) is unduly harsh and is not dictated by the language of the statute or the legislative history. I agree with the rationale of the District Court in *By-Rite Distributing, Inc. v. Brierley (In re By-Rite Distributing, Inc.)*, 55 B.R. 740 (D.Utah 1985), when it stated:

Section 365 contemplates two distinct actions, one by the trustee (or debtor-in-possession) and one by the Court. The trustee assumes or rejects, and the Court approves. The Code does not specify how the trustee is to assume or reject a lease, but the trustee's action is different from the Court's. Such is the import of § 365(a), which says that "the trustee, subject to the Court's approval, may assume or reject any ... unexpired lease of the debtor."

*By-Rite Distributing, Inc.*, 55 B.R. at 743.

The District Court went on to discuss the Legislative intent behind the 1984 Amend-

ments and concluded that by choosing language virtually identical to the old § 365(d)(1), which governed the assumption of leases in Chapter 7 cases, Congress must have intended Chapter 11 cases to be subject to the same time restrictions as Chapter 7 cases. *Id.* at 744. It is settled law that the 60-day limit of § 365(d)(1) applied only to the trustee's decision to assume, not to the court's approval of that decision. *In re Ro-An Food Enterprises Ltd.,* 41 B.R. 416, 418 (E.D.N.Y.1984).

The District Court concluded that the "trustee assumes or rejects the lease within the meaning of § 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume." *By-Rite Distributing, Inc.,* 55 B.R. at 753. The Debtor argues that it has informally communicated its intention to assume the Sublease by its actions. In *By-Rite,* the court did not reach the question of what action short of filing a motion to assume would constitute assumption of the lease. Since the debtor had unequivocally expressed its decision to assume the lease by filing a motion to assume, the question was not before the court. *Id.* at 742, n. 5.

■ The test for assumption or rejection of an executory contract or unexpired lease under § 365 is whether the trustee or debtor-in-possession has indicated assumption or rejection of the executory contract or unexpired lease by an unequivocal act. *In re 1 Potato 2, Inc.,* 58 B.R. 752 (Bktcy.D. Minn.1986); *By-Rite Distributing, Inc.,* 55 B.R. at 742–43; *In re Bon Ton Restaurant and Pastry Shop, Inc.,* 52 B.R. 850, 854 (Bktcy.N.D.Ill.1985). "An assumption may be shown by word or by deed consistent with the conclusion that the trustee intended to assume." *Vilas and Summer, Inc. v. Mahoney (Matter of Steel Ship Corp.),* 576 F.2d 128, 132 (8th Cir.1978). Therefore, the question is whether the Debtor manifested its intention to assume the Sublease by an unequivocal act.

■ I find that the Debtor's actions in this case do not constitute an unequivocal demonstration of its intention to assume the Sublease. Debtor argues that the phone call from its chief executive officer and the payment of rent demonstrated its intention to assume the Sublease. It was not proven that the phone call made by the chief executive officer was made within the statutory 60-day period. Even if this phone call had been timely, the communication was that the Debtor was going to continue operating out of the Leased Premises, not that the Debtor intended to assume the Sublease. I cannot reasonably infer that this statement by the Debtor is an assumption of the Sublease since there was no indication as to how long the Debtor intended to operate out of the Leased Premises. Nor do the Debtor's rental payments constitute an unequivocal act evidencing intent to assume the Sublease. The Debtor was late with all rental payments between the filing of the petition and the January rent payment and has missed altogether its November rent payment. Furthermore, payment of rent and performance of the other obligations under the Sublease is mandated by § 365(d)(3) of the 1984 Amendments. Performing the debtor's statutory obligation cannot amount to an unequivocal act evidencing intent to assume the unexpired lease.

The Debtor's prospects for reorganization are still up in the air. However, it is clear, and I find, that the Debtor had not made a decision to assume or reject the Sublease within the required 60-day period. In fact, the decision to assume was not made at all except in response to Wickes efforts to enforce its rights under § 365(d).

The intention behind the Congressional enactment of the 1984 Amendments was to provide lessors with more certainty about the actions of Chapter 11 debtors in possession. Congress intended that this section "would lessen the problems caused by extended vacancies and partial operation of space by requiring that the trustee decide whether to assume or reject the nonresidential real property lease within 60 days after the order for relief in a case under any chapter." 130 Cong.Rec. S8891, S8894–95 (daily ed. June 29, 1984) (state-

ment of Sen. Hatch) *reprinted in* 1984 U.S.Code Cong. & Ad News 590, 598–99. The actions in this case do not provide the certainty about the debtor's intentions which Congress was hoping to secure for lessors. While the resulting effects on debtors can be devastating, Congress enacted the 1984 Amendments knowing the harsh effects and presumably intended them. It is not for courts to second guess Congress in making an obviously political decision.

I agree with Wickes that the Debtor failed to comply with the provisions of § 365(d)(4) and did not assume the Sublease within the 60-day time period.

## WAIVER

■ The Debtor argues that if the unexpired Sublease was not assumed within the statutory 60-day period, then Wickes has waived its right to enforce the statutory rejection of the Sublease by Wickes' own actions after the 60-day period. Again, the courts are divided over the interpretation of § 365 on this matter. *See, In re T.F.P. Resources, Inc.*, 56 B.R. 112, 115 (Bktcy.S. D.N.Y.1985) (waiver of a § 365(d)(4) rejection allowed where lessor had accepted rent checks for eight months following filing of a Chapter 11 petition); *Matter of Curio Shoppes, Inc.*, 55 B.R. 148, 153 (Bktcy.D. Conn.1985) (equitable considerations allowed lease to be assumed where motion to assume was dated on the 59th day, but was filed on the 65th day after the Chapter 11 petition), *Cf. In re Taynton Freight System, Inc.*, 55 B.R. 668, 670 (Bktcy.M.D. Penn.1985) (court denied motion to assume filed 61 days after Chapter 11 petition); *In re Las Margaritos, Inc.*, 54 B.R. 98, 99 (Bktcy.D.Nev.1985) (waiver argument rejected where lessor accepted rent payments for 7 months after Chapter 11 petition, but never received notice of the bankruptcy petition).

Much of this confusion comes from the anti-waiver provision of § 365(d)(3), which provides that:

The trustee shall timely perform all the obligations of the debtor, except those specified in § 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding § 503(b)(1) of this title. The Court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title. (Emphasis added)

11 U.S.C. § 365(d)(3) (1985).

At least one court has interpreted this language as implying through a pregnant negative that waiver of the statutory rejection of § 365(d)(4) can occur after the 60-day period. *In re T.F.P. Resources, Inc.*, 56 B.R. at 115. I choose not to follow this interpretation of § 365(d)(3). I believe that Congress included the anti-waiver provision to resolve any potential conflict between the lessor's rights through the lease under State law and the lessee's newly imposed obligation under Federal Bankruptcy law. Under State law, acceptance of rental payments during the 60-day period might operate to waive any default which may have previously existed under the lease. By forcing the lessor to accept the rental payments of the lessee during the 60-day period, Congress was putting the lessor in the anomolous position of choosing between complying with the Bankruptcy statute and potentially losing its State law rights for prepetition defaults. Therefore, I find that the waiver which is referred to in § 365(d)(3) is directed toward waiver of the lessor's State law remedies and any other remedies available under the Bankruptcy Code and does not imply the ability to retroactively extend the time for assumption of the lease. *In re Las Margaritas, Inc.*, 54 B.R. at 99.

Once the statutory rejection of § 365(d)(4) has occurred, the lessee no longer has a possessory interest in the unexpired lease and, as such, it would be difficult to say that the lessor's actions might waive the automatic rejection and retroactively reinstate a possessory interest in the unexpired lease. *Lovitt v. Appleatchee Riders Ass'n. (In re Lovitt),* 757 F.2d 1035, 1041 (9th Cir.1985).

As support for its waiver claim, the Debtor cites several decisions allowing waiver under § 70(b) of the old Bankruptcy Act. 11 U.S.C. § 110(b) (repealed). *Larkin v. Sills,* 377 F.2d 1 (5th Cir.1967); *Entin v. Stevens,* 323 F.2d 894 (8th Cir.1963); *Ten-Six Olive v. Curby,* 208 F.2d 117 (8th Cir.1953). I am not convinced that the decisions under § 70(b) of the Bankruptcy Act are applicable to the interpretation of § 365(d)(4). The language of § 70(b) did not contain the clear and unequivocal language of Congress that "the trustee shall immediately surrender such nonresidential real property to the lessor." This language emphasizes the Congressional intent that § 365(d)(4) be strictly construed and that the purpose of the section is to preclude the court from retroactively extending the time for assumption upon retroactive application by the debtor. *In re Taynton,* 55 B.R. at 671.

Even if the interpretation of § 70(b) of the Old Bankruptcy Act were applicable to the language of § 365(d)(4), the waiver doctrine is inapplicable to this case for several reasons. First, this is not a case involving a default provision in the lease. Second, the claim of waiver is not for the purpose of determining past rental payments, but for reinstating a future possessory interest in the lease. Most importantly, Wickes did not intend to waive its rights under § 365(d)(4).

The argument that waiver should be applied to this case is not based on a public policy against enforcing default provisions in a lease. The Ninth Circuit in *Fisher v. City of Huntington Beach (In re Huntington),* 654 F.2d 578, 584–85 (9th Cir. 1981), summarizes those decisions which

have allowed a waiver claim under § 70(b). All of the decisions relied on the Supreme Court's holding in *Smith v. Hoboken Railroad, Warehouse, and Steamship Connecting Co.,* 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1946), where the Court held that lease forfeiture clauses need not be enforced if such clauses interfered with the important public policy considerations served by bankruptcy laws. All of the cases cited by the Debtor also involved forfeiture provisions in the leases. Here, the interpretation of § 365(d)(4) does not involve a forfeiture clause and Congress has already made the policy choice between the rights of the debtor and the rights of the lessor. That choice is clearly reflected in the unequivocal language of the statute.

■ The interpretation given to § 70(b) by the Eighth Circuit in *Entin* and *Ten-Six* must be read in light of the court's prior decision in *Wiemeyer v. Koch,* 152 F.2d 230 (8th Cir.1945). There the court stated that "the statutory presumption of rejection by nonaction within the period of sixty days is a conclusive statutory presumption." *Id.* at 234. Payments made after the statutory period are not payments made under the lease, but payments made as reasonable value for the use of the premises. *Id.* Consequently, in denying a claim for increased use payments, the court did not have to find that the lease was in force, even though "rental" payments were made in accordance with the lease after the statutory rejection.

In *Ten-Six,* there had been a surrender and acceptance of the leased premises and the only issue before the court was the lessor's claim for past damages and reasonable rental value. *Ten-Six,* 208 F.2d at 122. This decision should be read as holding that *Wiemeyer* does not give rise to a claim for reasonable value for the use of the premises by the lessor where the lessor had treated the lease as still in effect.

In *Entin* and *Larkin,* the courts used waiver to reinstate a lease that had not been formally assumed, but in both cases the lessor had consented to an assignment of the lease and later argued that the lease

was rejected by operation of § 70(b). In *Entin*, the court affirmed a finding that the lessee had assigned the lease within the 60-day period and that the lessor had consented to that assignment. *Entin*, 323 F.2d at 899. Similarly, in *Larkin*, the lessor had agreed to a renegotiation of the lease within the 60-day period, and then backed out after receiving a higher rental offer for the premises. *Larkin*, 377 F.2d at 2. Since an assumption can occur by less than an express motion to assume the lease, these cases should be read as holding that the lessor's consent to assigning the lease is an unequivocal act evidencing an intention to assume the lease within the statutory period.

Ultimately, the test for waiver rests on a determination of the intentions of the party waiving its right. 28 Am. Jur.2d *Estoppel and Waiver* § 160 (1966). In this case, I find that the facts are insufficient to find that Wickes intended to waive the automatic rejection of the unexpired lease under § 365(d)(4). It is clear that both parties in this case made no effort to ascertain the exact status of the lease from the time that the Chapter 11 petition was filed until January of this year. However, Wickes' letter of January 16, 1986, demonstrates that they did not intend to waive their rights under § 365(d)(4). In fact, the letter explicitly exercises the statutory rejection provided for under the statute and requests that the Debtor vacate the premises immediately.

It would be difficult to say that Wickes was under an affirmative duty to immediately take advantage of the 60-day rejection period under § 365(d)(4) and force the lessee to vacate the leased premises. There is nothing in the statute that imposes a duty on the lessor to immediately take advantage of the statutory rejection. Allowing the lessor time to embrace the statutory rejection serves the purpose of the statute, particularly in this case where Wickes had undergone a change in corporate ownership only seven days prior to the end of the 60-day period.

## RELIEF

Wickes has requested an order from this court directing the debtor to immediately surrender and vacate the lease premises. Some courts have provided such an order. *See, In re Southwest Aircraft Services, Inc.*, 53 B.R. at 811; *In re Las Margaritas, Inc.*, 54 B.R. at 100. However, such relief is properly sought by complaint. Bankruptcy Rule 7001(1). Consequently, I will modify the stay under § 362(a) to allow Wickes to pursue its state law remedies for evicting the debtor.

The Debtor raises an interesting question of Kentucky law as to whether Wickes, by its inaction from September 23, 1985, until January 16, 1986, has waived its rights to evict the Debtor from the Leased Premises. Kentucky law on tenant's rights provides in part as follows:

*"Holding over beyond term—Tenancy created by—Rights of parties—*(1) If, by contract, a term or tenancy for a year or more is to expire on a certain day, the tenant shall abandon the premises on that day, unless by express contract he secures the right to remain longer. If without such contract the tenant shall hold over, he shall not thereby acquire any right to hold or remain on the premises for ninety (90) days after said day, the possession may be recovered without demand or notice if proceedings are instituted within that time. But, if proceedings are not instituted within ninety (90) days after the day of expiration, then none shall be allowed until the expiration of one (1) year from the day the term or tenancy expires. At the end of that year the tenant shall abandon the premises without demand or notice, or stand in the same relation to his landlord that he did at the expiration of the term or tenancy aforesaid; and so from year to year, until he abandons the premises, is turned out of possession, or makes a new contract."

Ky.Rev.Stat. § 383.160(1).

I leave the interpretation of this provision to the Kentucky courts.

Wickes argues that the Bankruptcy Code provision requiring that the trustee immediately surrender the leased premises should be given supremacy over Kentucky law. I accept the argument of the Debtor that in bankruptcy cases the rights of parties under real estate leases are governed by state law unless contrary to the provisions of the Bankruptcy Code. "Where Congress has chosen to exercise its authority, contrary provisions of state law must accordingly give way. It is equally well-settled, however, that state laws are suspended only to the extent of actual conflict with the bankruptcy system provided by Congress, so that in the absence of any conflict between the state and bankruptcy laws, the law of the state where the property is situated governs question of property rights." *Johnson v. First National Bank of Montivedo, Minn.*, 719 F.2d 270 (8th Cir.1983). In this case, the language of the § 365(d)(4) does not conflict with allowing state law to control the rights of a lessee who holds over without a lease. I will therefore abstain from construing the Kentucky statute. 28 U.S.C. § 1334(c)(1).

THEREFORE, IT IS ORDERED:

1. Wickes Motion for Surrender of Nonresidential Real Property is denied.

2. Wickes Motion for Termination of the Automatic Stay is granted, and the automatic stay is terminated to allow Wickes to pursue its remedies under state law.

3. The Debtor's Motion for Assumption of an Executory Lease of Nonresidential Real Property is denied.