In the Matter of J. WOODSON HAYS, INC., d/b/a Olde World Cheese Shop, Debtor.

Bankruptcy No. 86–2241.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 9, 1987.

Harley E. Riedel, Tampa, Fla., for debtor.

Thomas G. Long, Tampa, Fla., for Village East Partners, Ltd.

### ORDER ON MOTION TO ASSUME AND MOTION FOR RELIEF FROM AUTOMATIC STAY

ALEXANDER L. PASKAY, Chief Judge.

IN THIS Chapter 11 case J. Woodson Hays, Inc., d/b/a Olde World Cheese Shop (Debtor) seeks authority to assume an unexpired non-residential lease. The flip side of the same coin is a motion filed by Village East Partners, Ltd. (Village East) who seeks relief from the automatic stay in order to evict the Debtor from the business premises occupied by the Debtor under the lease sought to be assumed. The issues raised by the Motions, unlike some others which ordinarily involve only the question whether or not the Debtor tenant is able to comply with the requirements of § 365(b)(1)(A)(B)(C) of the Bankruptcy Code present a different but basically a narrow issue. The issue presented brings into play the interpretation and application of § 365(d)(1)(2)(3)(4), the Section which sets forth facially rigid, inflexible, precise and definitive rules governing assumption of non-residential leases which at the time of the commencement of the case were still in force and not yet expired or terminated. To put the issues in its simplest terms, the question is whether or not the Debtor who occupies a non-residential property under a lease forfeited its right to assume the lease because it failed to file a motion seeking authority to assume the lease within 60 days from the date of the commencement of the case as required by § 365(d)(4). The underlying facts which developed at the final evidentiary hearing and which are germane and relevant to the issue outlined above may be summarized as follows:

The Debtor is a Florida corporation and is the owner and operator of a sandwich, wine, and cheese shop located on premises owned by Village East under a written lease. (Debtor's Exh. No. 4) Village East is a limited partnership and Eiger Corporation is the general partner of the same. Eiger Management Company (Management) is a wholly owned subsidiary of the general partner, Eiger Corporation, and was at the time pertinent and still is the leasing agent for the shopping center involved. The original lease executed by the Debtor in 1981 was to expire in early 1986, but it was renewed pursuant to its terms and will expire in 1991. (Debtor's Exh. No. 6) Prior to the commencement of this Chapter 11 case and after the renewal of the lease, Mr. Hays (Hays) the principal of the Debtor, approached the agent of the landlord, Mr. Fernandez, and later Ms. Miller, the regional director for Management and discussed the possibility of expanding the leased premises. On April 7, 1986, Ms. Miller wrote to Mr. Hays confirming their recent discussions concerning the expansion of the premises occupied by the Debtor. (Debtor's Exh. No. 9; Exh. No. 2 attached to Miller deposition) Ms. Miller indicated in her letter the landlord's willingness to enter into an agreement with the Debtor for the construction of an additional 1,491 square feet of improvements. Ms. Miller also stated that before the agreement could be finalized several contingencies would have to be met by the Debtor. She also indicated the landlord's willingness to grant free rent to the Debtor in order to allow the Debtor to recapture the construction expense which was to be borne by the Debtor. In conclusion Ms. Miller stated in her letter "I trust this

letter will serve as our intent to work with the Debtor".

It is without dispute that prior to June 2, 1986, the date the Debtor filed its Petition for Relief under Chapter 11, the Debtor was already delinquent in rent payments, having failed to make the rent payments for the months of May and June. However, it is equally without dispute that the Debtor did pay the rent for July and August, the first two full months after it filed its Petition for Relief under Chapter 11. It appears that Mr. Hays had frequent discussions initially with Mr. Fernandez, the renting agent of the landlord, but most importantly, also with Ms. Miller, who was without dispute empowered to negotiate leases with tenants of the shopping center. During all these negotiations, it was no secret that the Debtor intended to assume the lease and Ms. Miller clearly stated the landlord's position that the Debtor could continue under the lease provided that the rent was paid currently and if all arrearages in the rent would be paid. The discussions between Mr. Hays and Ms. Miller culminated in the transmittal of a letter from Mr. Hays addressed to Mr. Fernandez and Ms. Miller. In this letter Mr. Hays included the written proposal regarding the continuation of the lease. (Debtor's Exh. No. 3) On August 13, 1986, Ms. Miller specified the conditions for assumption of the lease on the undated letter of Mr. Hays. Although it is not clear whether or not Ms. Miller actually transmitted a copy of this letter to Mr. Hays, it is fair to assume it was, in fact, received by Mr. Hays. This conclusion is supported by the fact that on September 9, 1986, counsel for the landlord wrote to counsel for the Debtor confirming their telephone conversation of September 5 in which the Debtor agreed to pay the rent arrearages and pursuant to their agreement it agreed to assume the lease (Exh. No. 2) notwithstanding the pendency of the Chapter 11 case. Counsel for the Debtor also indicated that in addition to assumption of the lease the Debtor agreed to sign a promissory note, the original of which was enclosed in the transmittal pursuant to which the Debtor agreed to pay $1,000.00 per month in addition to the regular monthly rent called for by the lease in order to cure the total arrearages of $6,652.34. The promissory note was, in fact, executed by Mr. Hays as president and also individually on behalf of the Debtor as requested. (Debtor's Composite Exh. No. 1) It is without dispute that the Debtor did not file a Motion to Assume this nonresidential lease until October 14 after the landlord, Village East, filed its motion and sought relief from the automatic stay.

The landlord's motion seeking relief from the stay is based on the proposition which is without dispute that the Debtor did not file a motion within 60 days from the date of the Order for Relief, that is, from June 2, and therefore, by virtue of § 365(d)(4) the lease is deemed to be rejected and therefore, the Debtor must immediately surrender the non-residential real property to the landlord.

The Debtor concedes, as it must, that he did not file a Motion for Assumption of the lease prior to August 2, 1986, that is prior to the expiration of the time period provided for assumption of unexpired non-residential leases by § 365(d)(4). It contends, however, that notwithstanding that undisputed fact it should be permitted to seek an assumption based on the following premises urged by the Debtor in the alternative:

First, it is the Debtor's contention that there is no requirement to actually file a Motion to Assume within the 60–day time period and the Debtor may assume an unexpired non-residential lease without actually filing a formal written motion. Based on this proposition, the Debtor urges that it did, in fact, assume this lease prior to the expiration of the 60–day period by communicating its intention to assume the lease to the landlord.

Second, if the actions of the Debtor did not constitute an effective assumption, Village East has either waived its right to a forfeiture or in any event, it is estopped to assert a forfeiture of the lease by its conduct.

Third, it is the contention of the Debtor that based on § 105 of the Bankruptcy Code, this Court should use its equitable powers and permit the Debtor to seek an assumption of the lease.

Fourth, in any event, so contends the Debtor, that the Debtor and Village East entered into a valid and enforceable contract after the expiration of the 60–day period whereby it was agreed by the parties to allow the Debtor to assume the lease or in any event, even if the lease was terminated, to renew the terminated lease for an additional term.

■ Under the Bankruptcy Act, the overwhelming weight of authority was that the act of assumption by a trustee could be other than the filing of a formal written motion. *In re Huntington Limited,* 654 F.2d 578, 587 (9th Cir.1981); *In re Steelship Corp.,* 576 F.2d 128, 132–33 (8th Cir. 1978); *Brown v. Presbyterian Ministers Fund,* 484 F.2d 998 (3rd Cir.1973); *Nostromo, Inc. v. Fahrenkrog,* 388 F.2d 82 (8th Cir.1968); *In re Forgee Metal Products, Inc.,* 229 F.2d 799, 801 (3rd Cir.1956). One commentator dealing with this subject stated:

> Assumption of a contract is an act requiring notification of the party concerned. The trustee cannot assume merely in his own mind. He must notify the other party.... No particular form of notification is provided. A written or even an oral notice should be deemed sufficient. 4B *Collier on Bankruptcy,* ¶ 70.42[6], at 533 (14th ed. 1976).

The subject of executory contracts and unexpired leases is dealt with by § 365 of the Bankruptcy Code enacted by the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549. While this Section adopted almost verbatim the language of § 70(b) of the Bankruptcy Act of 1898 and provided a 60–day period for the trustee to assume an executory contract or an unexpired lease and provided for the automatic rejection in the event the trustee failed to act within the time fixed, it contained no corresponding provision applicable to cases filed under Chapter 11 of the Bankruptcy

Code. Thus, prior to the amendment of § 365 of the Bankruptcy Code by the Bankruptcy Amendment and Federal Judgeship Act of 1984 (BAFJA), in a Chapter 11 case the trustee was authorized to assume or reject an executory contract or an unexpired lease any time before confirmation of the plan. Due to the extensive lobbying by the shopping center interest which bitterly complained that this section is abused by Chapter 11 Debtors who are tenants in shopping centers, Congress amended § 365(d)(2). The amended version now provides that in a Chapter 9, 11, or 13 cases if a trustee does not assume or reject an unexpired lease of a non-residential real property within 60 days after the date of the Order for Relief, or within such additional time as the Court for cause may fix within such 60–day period, the lease is deemed to be rejected, and the trustee shall immediately surrender such non-residential real property of the lessor. Section 365(d)(4). Unfortunately, this amendment, just like the original version, failed to spell out either the procedure to assume a non-residential unexpired lease or furnish any guidelines as to how this assumption is actually accomplished, although it is clear the debtor/tenant may not assume the lease unless authorized by the Court to do so and meets the requirements for assumption set forth in § 365(b)(1)(A)(B) and (C).

While the general legislative history of BAFJA is somewhat vague and unspecific, the original version of this section dealt with this subject. The House Report accompanying H.R. 8200, the Bill which ultimately in the modified version was enacted into law as the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 92, Stat. 2549 indicates that one of the matters which was to be dealt with by Rules was the "procedure for court approval of trustee's assumption or rejection of executory contracts or unexpired leases, including the method of initiating such approval and any notice required". H.R. 95–595, 95th Cong., 1st Sess. 295 (1977) Appendix I (59), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6252. Pursuant to this directive by Congress, the

Supreme Court promulgated and Congress approved Bankruptcy Rules on practice and procedure including Bankruptcy Rule 6006. This Rule provides that the procedure to assume a lease is a contested matter governed by Bankruptcy Rule 9014 and in turn by Bankruptcy Rule 9013. This Rule requires that any request for an order unless when an application is authorized, shall be by written motion.

Thus, it is evident that before a Debtor can obtain an approval of an assumption of a non-residential lease of real property, which as a condition precedent to the Court approval required by § 365(a), it must file a motion and seek authorization for assumption. While it is true that this Rule fails to provide and fix a bar date to file the motion, the Rule leaves no doubt that no assumption can be effective absent a motion for authority to assume, and of course, a favorable action by the court on the motion.

Interpreting § 365, especially its amendment by BAFJA, courts are by no means in agreement as to the necessity of filing a formal written motion as a condition precedent to assumption of the lease in spite of B.R. 6006. *In re Ro-An Food Enterprises, Ltd.,* 41 B.R. 416 (E.D.N.Y.1984); *In re Re-Trac Corp.,* 59 B.R. 251, 255 (Bankr.D. Minn.1986) ("The test for assumption of an unexpired lease under § 365 is whether the trustee ... has indicated assumption or rejection of ... the unexpired lease by an unequivocal act.... 'An assumption may be shown by word or by deed consistent with the conclusion that the trustee intended to assume.' "); *In re 1 Potato 2, Inc.,* 58 B.R. 752 (Bankr.D.Minn.1986); *In re Bon Ton Restaurant and Pastry Shop, Inc.,* 52 B.R. 850 (Bankr.N.D.Ill.1985); *In re By-Rite Distributing, Inc.,* 55 B.R. 740 (D.Utah 1985) (dictum); *In re Zacherl Coal Company, Inc.,* 14 B.R. 1001 (Bankr.W.D. Pa.1981); *In re Avery Arnold Construction, Inc.,* 11 B.R. 34 (Bankr.S.D.Fla.1981).

As stated by the district court in *Ro-An Food Enterprises, supra.*... "that the Trustee can assume the unexpired lease by action less formal than the Rule approv-

al.... Moreover, while less than formal acts of assumption do not obviate the need for court approval under the former Bankruptcy Act and Bankruptcy Code, they do serve to give notice and preclude deeming the lease rejected by inaction under 11 U.S.C. § 365(d)(1)." *Id.* at 418.

The same view was restated by the district court in the case of *In re By-Rite Distributing, supra,* where Judge Jenkins, a former bankruptcy judge, held that:

> The Court concludes that the trustee assumes or rejects the lease within the meaning of § 365(d)(4) when he makes up his mind to do so and communicates his decision in an appropriate manner, such as by filing a motion to assume. *Id.* at 742.

Other cases decided under BAFJA do hold that a formal motion to assume is required. Most of these cases follow the decision of the Bankruptcy Appellate Panel for the Ninth Circuit in *In re Treat Fitness Center, Inc.,* 60 B.R. 878 (9th Cir.BAP 1986); *see also In re Chandel Enterprises, Inc.,* 64 B.R. 607 (Bankr.C.D.Cal.1986); *In re Spats Restaurant & Saloon,* 64 B.R. 442 (Bankr.D.Nev.1986); *In re House of Emeralds, Inc.,* 57 B.R. 31 (Bankr.D.Hawaii 1985) (court order must be entered within 60–day period.)

This Court previously had occasion to consider this question albeit under a different set of facts in the case of *In re Communications Company of America,* 65 B.R. 580 (Bankr.M.D.Fla.1986) and *In re Condominium Administrative Services, Inc.,* 55 B.R. 792 (Bankr.M.D.Fla.1985). In *Communications Company of America, supra,* there was no assertion that the Debtor assumed by word or deed within the sixty days. In *Condominium Administrative Services, supra,* a timely motion to assume the lease had, in fact, been filed, although the court had apparently denied the motion upon appointment of a Trustee.

Having considered the matter and the cases which dealt with this subject, this Court is of the opinion that the views expressed by the Bankruptcy Appeal Panel for the Ninth Circuit (BAP) in the case of

*In re Treat Fitness Center, Inc., supra,* and the reasoning of the court in that case is more persuasive and more consistent with the entire statutory scheme rather than the holdings and reasonings of the courts which held that the trustee may assume an unexpired lease only by action rather than by a formal written motion.

Based on the foregoing, this Court is satisfied that to dispense with the requirement to file a written motion as a condition precedent for assuming an unexpired lease would be clearly contrary to the clear intent of the 1984 Amendment of § 365 and would not carry out the stated Congressional intent and certainly would not comply with the requirements of B.R. 6006.

■ This leaves for consideration whether or not the seemingly strict requirements of § 365 could be waived and such waiver or estoppel could be found on the basis of equitable principles and excuse the Debtor's failure to file a motion to assume the lease in question within the 60–day period. Considering this proposition advanced by the Debtor, it is well to state at the outset that courts generally abhor forfeitures and use equitable principles to prevent forfeiture are employed especially by courts in connection with controversies between landlords and tenants. *Fowler v. Resash Corp.,* 469 So.2d 153 (Fla. 3d D.C.A. 1985); *Smith v. Winn-Dixie Stores, Inc.,* 448 So.2d 62 (Fla. 3d D.C.A. 1984); *Rader v. Prather,* 100 Fla. 591, 130 So. 15 (1930). It is equally clear, however, that no principles of equity should be resorted to if to do so would violate the clear and precise mandate of a governing statute.

The courts interpreting the corresponding provisions dealing with this subject under the Act of 1898 almost uniformly held that any breach could be waived by the landlord and at least could be validated in spite of a breach. For instance, in the case of *Larkins v. Sills,* 377 F.2d 1 (5th Cir. 1967), the Fifth Circuit Court of Appeals in affirming the decision of the referee which granted a motion to assign the lease concluded that statements of the landlord which offered to cooperate with the trustee

was sufficient to operate as a waiver. This Court approvingly cited an Eighth Circuit case of *Ten-Six Olive v. Curby,* 208 F.2d 117, 123 (8th Cir.1953), in which the Court of Appeals noted that the 60–day time period provided by § 70(b) was obviously inserted for the benefit of the lessor, thus, there is no reason why the lessor may not waive its right accorded to the landlord by the terms of the statute.

In the case of *Entin v. Stevens,* 323 F.2d 894 (8th Cir.1963), the Court of Appeals for the Eighth Circuit cited with approval of the Eleventh Circuit and affirmed a finding by the lower courts of a waiver based on the facts, which the court summarized as follows:

> The facts, as set out above, show us that the lessor was aware of the status of the debtor at all times and was informed of intended plans as they developed. To these plans the lessor apparently consented until the telegram of December 13, 1962, the day before the referee's hearing on the proposed sale, in which the lessor gave notice of his intention to cancel the lease. Prior to this the lessor had accepted each month's rental payments without reservation. It further appears that the actions of Lester M. Entin associates at this time is to gain a superior bargaining position with respect to the lease in question. The Court finds that under all of the circumstances the lessor had waived the right he may have had to cancel the lease. *Id.* at 898.

The Eleventh Circuit, when called upon to consider the same question, has expressly approved the *Larkins* decision in the case of *In re Ranch House of Orange-Brevard, Inc.,* 773 F.2d 1166 (11th Cir.1985), a case decided after the enactment of the Code. The Court of Appeals considered the application of equitable principles after a lease had been expressly rejected through confirmation of a plan of reorganization. In this case the Court stated:

> "We do not agree, however, that doctrines of estoppel and waiver are unavailable as a matter of law once an express rejection of an unexpired lease has oc-

curred. We have no case directly addressing this point, but *controlling authority in this circuit reaches a similar conclusion with respect to rejections that have occurred by operation of law".* *See also Entin v. Stevens,* 323 F.2d 894 (8th Cir.1963). (Emphasis added).

In light of *Larkins* and *Ranch House of Orange-Brevard,* it is clear that equitable principles of waiver and estoppel are applicable, unless the BAFJA Amendments make such equitable doctrines inapplicable to leases deemed to have been rejected under § 365(d)(4) by operation of law.

Most cases decided under the BAFJA Amendment have recognized the continuing validity of equitable principles in connection with the application of § 365(d)(4). *See In re T.F.P. Resources, Inc.,* 56 B.R. 112 (Bankr.S.D.N.Y.1985); *In re Dulan,* 52 B.R. 739 (Bankr.C.D.Cal.1985); *In re By-Rite Distributing, Inc.,* 47 B.R. 660, 670 n. 16 (Bankr.Utah, 1985) (dictum), *rev'd on other grounds* 55 B.R. 740 (D.Utah 1985).

In *In re Haute Cuisine, Inc.,* 57 B.R. 200 (Bankr.M.D.Fla.1986), no motion to assume the lease was filed within 60 days, although the landlord and tenant negotiated extensively regarding the assignment of the lease. This Court held that such conduct operated to estop the landlord from asserting that the lease was terminated by operation of law.

There is no question, as noted earlier, that the amendments of § 365 by BAFJA were enacted for the sole benefit for owners of nonresidential properties primarily for the benefit of owners of shopping centers. This being the case, as the Fifth Circuit noted in *Ten-Six Olive v. Curby, supra,* there is no reason why a lessor may not waive the right accorded to the landlord by the provision of the statute or it may not be estopped to assert the same if there is evidence to establish that because of its conduct the failure to comply strictly with the provisions of the statute was not the fault of the debtor/tenant, but it was done in reliance of the conduct of the landlord.

Applying the foregoing principles to the facts under consideration in this case, this Court is satisfied that Village East did waive its right to either be presented with a formal motion for assumption of the lease or, in fact, Court approval of the assumption, or both, prior to the expiration of the 60–day period provided for by § 365(d)(4) for the following reasons:

Under the facts of this case, it is certainly reasonable to assume that the Debtor did not consider the need to file a formal motion to inform Village East of its intention to assume the lease in question because its intention to do so was made without equivocation obvious and clear and was made patently clear to the representatives of Village East, both to Mr. Fernandez and Ms. Miller. The fact urged by Village East that Fernandez did not have an authority to consent to the assumption of the lease is of no consequence simply because the important thing was a clear communication by the Debtor of its intent to assume a lease, not an actual effective assumption of a lease by consent or otherwise, i.e. by Court approval. Moreover, this Court is satisfied that the Debtor's intent to assume was also conveyed to Ms. Miller, who certainly had the authority to approve the assumption. This conclusion, however, should not be construed to dispense with the duty of the Debtor to establish that it is in a position to meet the requirements of § 365(b)(1)(A)(B) and (C) and should not be construed to intimate and shall not be assumed that the Debtor is now authorized to assume this lease in question. On the contrary, this conclusion of the Court means only that the Debtor's failure to file a Motion to Assume within the 60–day period has no barrier to its attempt to obtain an approval by the Court by its motion filed after the expiration of the 60–day period.

Based on these conclusions, this Court deems to be unnecessary to consider the additional contentions advanced by the Debtor saying that what occurred after August 2 was tantamount to a new legal contract to enter into a new lease or an agreement to renew the old lease which

occurred post-petition creating a valid, enforceable contract, and therefore, the Debtor's ability to assume the original lease is academic and moot.

A separate order will be entered in accordance with the foregoing.