**In re THW ENTERPRISES, INC.,**
**d/b/a Nibbles, Debtor.**

**Bankruptcy No. 87 B 10505 (TLB).**

United States Bankruptcy Court,
S.D. New York.

July 15, 1988.

---

**352**

Jules Teitelbaum, P.C. by Richard Braverman, Michele V. Kunowitz, New York City, for debtor.

Dornbush, Mensch, Mandelstam & Silverman by Martin J. Auerbach, New York City, for Unit No. 3 Corp.

Harold Jones by Donna Lieberman, New York City, U.S. Trustee.

### DECISION AND ORDER ON DEBTOR'S MOTION TO ASSUME ITS LEASE

TINA L. BROZMAN, Bankruptcy Judge.

This is one of those unfortunate cases where a debtor, through inattention to the mandates of the Bankruptcy Code (the Code) respecting non-residential real property leases, possibly stands to lose its most valuable asset to a lessor whose rent has virtually always been timely paid, who has suffered no harm from the existence of these proceedings save for the non-payment of rent for the one month during which the chapter 11 case was filed, and who would reap a windfall from the debtor's error. The debtor, THW Enterprises, Inc. (THW), now seeks by order to show cause to assume its lease with Unit No. 3 Corporation, the lessor (Lessor). The Lessor opposes the motion, arguing that the lease was previously rejected by operation of law in accordance with section 365(d)(4) of the Code by virtue of the debtor's failure to timely assume or reject it or to have the time to do so extended.

### I.

On March 23, 1987, THW filed a petition for reorganization pursuant to chapter 11 of the Code and was continued in possession of its property and operation of its business. THW's most valuable asset is a non-residential lease of a restaurant located in the Roger Smith Hotel in Manhattan. The lease term commenced in 1976 and in 1986 was extended, pursuant to a renewal option, until May 1991. The rent reserved is $2,083 per month, plus refuse and gas charges, and a percentage of the restaurant's gross volume over a certain dollar figure.

Although the lease provides for payment to be made on the first of each month, the parties did not comply with this provision, but near month's end the hotel paid for meals charged to guests' rooms and the debtor then paid rent. This arrangement was a practical one given that the hotel's monthly indebtedness to THW and THW's rent approximate one another. This system had been in operation for years, with no objections from the Lessor to the timeliness of THW's payments. Indeed, the timeliness of rent payments is not at issue here.[1]

Many of the essential facts are undisputed. Thus, it is agreed that: (i) the Lessor was informed of the bankruptcy from the outset; (ii) for the 14 months during which this case has been pending THW has tendered and the Lessor has accepted the rent reserved; (iii) THW did not move to assume or reject the lease within the first sixty days after the case was filed nor did it move before the expiration of that period to extend its time to do so; (iv) the Lessor did not move to compel assumption or rejection of the lease, did not move to modify the stay and did not manifest to THW any intention to terminate the tenancy; and (v) the Lessor did not tell THW that it was waiving any of the protections available to a landlord under section 365 of the Code.

---

1. In a hearsay affidavit of Fred J. England, Chief Operating Officer of the Roger Smith Hotel, offered in opposition to the motion, it is stated that the payments were untimely. But the arguments proffered by counsel were wholly unrelated to timeliness.

What is at issue is whether the court is empowered to permit assumption of this lease, whether the Lessor's conduct was such as to constitute a waiver of the provisions of section 365(d)(4) or as to preclude the Lessor from raising the argument that the lease has been deemed rejected, and, if those two issues are decided adversely to the Lessor, whether the lease may be assumed.

The testimony offered by Stephen Austin (Austin), the Vice President of THW, and James Theodore (Theodore), President of THW, is both confusing and contradictory. It is best understood if broken down into three distinct time frames. The first phase is the pre-petition period, the second is the seven months from the date of the filing of the petition until the death of the chief operating officer and president of the Lessor, Oscar De Lima (De Lima), and the third begins immediately after De Lima's death and continues until the initiation of this contested matter. The Lessor declined to adduce any evidence in rebuttal to the debtor's witnesses, relying instead on England's hearsay affidavit which, in any event, did not rebut the testimony in any material respect.

The testimony clearly establishes that during the pre-petition phase THW and the Lessor engaged in serious discussions about the possibility of an extension of the term of the lease or, alternatively, a buyout of the lease by the Lessor. In September 1986, six months prior to the bankruptcy, Theodore met with De Lima to discuss a seven year extension of the lease term. Approximately three months later, De Lima offered to pay THW $300,000 for the remainder of the lease but THW rejected the offer. The pre-petition phase ended with no agreements on either a buyout or extension.

The testimony respecting the post-petition period prior to De Lima's death is not as clear. Austin testified that there was a meeting during this period attended by himself, Theodore, England, and De Lima. Yet during cross-examination, Theodore, in direct response to a clarifying question by this court, explicitly insisted that he never met with De Lima after the bankruptcy about either an extension or buyout. He was quite certain that no post-petition discussions occurred because De Lima's mental condition during that period was such that he drifted in and out of conversations. Theodore dated the meeting that Austin referred to as pre-petition. Based on the certainty exhibited by Theodore, a credible witness, we find that his testimony is the more accurate and that no discussions were held post-petition and prior to De Lima's death respecting an extension or buyout of the lease.

In November 1987, De Lima died. For a period of at least six weeks, the management of the Lessor was in turmoil because it was not known who would replace De Lima. As a result, THW was frustrated in its attempt to schedule discussions about the lease. Finally, sometime after the new year, a Mr. Knowles, De Lima's son-in-law, emerged as his successor.

With Knowles' appearance began what Theodore described as a "ping pong" game. Theodore asked England to whom he had to speak about an extension or buyout. England named Knowles. When Theodore met with Knowles one evening a few weeks after the first of the year, Knowles said he'd have to get back to Theodore because "that's Mr. England's department." When Theodore saw England, England seemed surprised that Knowles hadn't talked to Theodore about the lease and suggested that Theodore would have to speak with the Lessor's attorneys. No meeting with the attorneys occurred. Until this motion was made Theodore and Austin were never told that an extension on the lease would not be granted and that a buyout offer would not be made.

## II.

 Section 365(d)(4) of the Code provides that if a trustee or debtor in possession does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court within that period fixes, then the

lease is deemed rejected. It is uncontested here that no motion was made to assume or reject and no request was made for an extension of time to do so. But THW contends that it is nonetheless entitled to assume the lease because of the Lessor's acceptance of 14 months' rent post-petition and its ongoing discussions with THW about a possible extension or buyout of the lease.

The threshold challenge to THW's motion to assume is jurisdictional, the Lessor arguing that the court is powerless to permit assumption of the lease regardless of the Lessor's actions or inactions. This is so, the Lessor urges, because Section 365(d)(4) must be strictly construed; once the 60 days has expired, nothing may interfere with the revesting of the premises in the landlord. We do not agree with the Lessor's draconian interpretation of the statute but believe that concepts of waiver and estoppel which were applied under the former Bankruptcy Act to prevent inequitable forfeitures inhere in the Code as well.

The Lessor's jurisdictional argument is predicated upon the Ninth Circuit's analysis of section 70(b) of the former Bankruptcy Act, 11 U.S.C. § 110(b) (repealed) in *Cheadle v. Appleatchee Riders Association (In re Lovitt)*, 757 F.2d 1035 (9th Cir.1985), *cert. denied*, 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985). There a trustee failed to discover within 60 days the existence of recorded mineral leases which were not scheduled by the debtor. The case was closed. Thereafter it was reopened and a successor trustee learned of the leases but did not move to assume them. Instead, she sold her interest in the leases without warranty. The bankruptcy court confirmed the sale and the lessors appealed. The district court reversed and was affirmed by the circuit court which held that the leases had been rejected by operation of law, divesting the court of power to confirm their sale. The court reasoned that "executory contracts and leases—unlike all other assets—do not vest in the trustee as of the date of the filing of the bankruptcy petition ... [but] only upon the trustee's timely and affirmative act of

assumption." *Id.* at 1041. Further, the court reasoned that since a rejection relates back to the filing of a bankruptcy petition, a rejected executory contract or lease never becomes a part of the bankrupt's estate and cannot be sold.

*Lovitt* did not deal with issues of waiver and estoppel by virtue of the landlord's conduct. Moreover, its conclusion that an executory contract prior to rejection or assumption does not vest in the trustee is, we think, incorrect, at least under the Code. Section 541 creates an estate comprising all legal or equitable interests of the debtor in property as of the commencement of the case. Section 362(a)(3) automatically stays any act to obtain possession of property of the estate or of property from the estate. As this circuit has recently determined, a lease not yet assumed is property protected by the automatic stay from any direct or indirect act which will interfere with the debtor's interest. *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse)*, 835 F.2d 427 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988). The Supreme Court, in wrangling with the difficult question of what rights exist under an executory contract prior to its assumption has held that the contract is unenforceable against the trustee. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). The analysis that the trustee is vested with the contract but that the contract is unenforceable against him unless and until assumed is the better approach. *Cf. Texas Western Finance Corp. v. McCraw Candies, Inc.*, 347 F.Supp. 445 (N.D.Tex.1972) (where executory contract is not scheduled and trustee has no knowledge of it and could not have obtained knowledge of it, trustee is nonetheless vested with the contract and is not presumed to have rejected it); *accord* 2 L. King, *Collier on Bankruptcy*, ¶ 365.03 at 365–25—26 (15th ed. 1988).

The Lessor's reliance on *In re Las Margaritas, Inc.*, 54 B.R. 98 (Bankr.D.Nev. 1985); *Pignato v. Dein Host, Inc. (In re Dein Host, Inc.)*, 835 F.2d 402 (1st Cir.

1987) and *Treat Fitness Center, Inc. v. Rainbow Investment Co. (In re Treat Fitness Center, Inc.),* 60 B.R. 878 (9th Cir. BAP 1986) for the proposition that the court lacks jurisdiction is equally flawed. *Las Margaritas* determined that the court was powerless to allow untimely assumption to take advantage of an offer to purchase the lease. With that much of the decision we are in accord. But the court also determined that acceptance of rent after expiration of the 60 day period regardless of the length of time over which rent was accepted and the landlord's knowledge of the bankruptcy could never constitute an estoppel. (The court apparently did not consider waiver.) We disagree with that analysis. *Las Margaritas* relied on the bankruptcy court's decision in *In re By–Rite Distributing, Inc.,* 47 B.R. 660 (Bankr.D.Utah 1985), *rev'd* and *remanded sub nom. By–Rite Distributing, Inc. v. Brierley (In re By–Rite Distributing, Inc.),* 55 B.R. 740 (D.Utah 1985), for the proposition that Congress intended to deny flexibility to debtors when it enacted section 365(d)(4). But the bankruptcy court in *By–Rite,* in a footnote not germane to the overturned holding in the case, noted that principles of waiver and estoppel are available to defeat the operation of section 365(d)(4). 47 B.R. at 670, n. 16.

*Dein Host* does not stand for the proposition cited; although the jurisdictional issue was presented to the circuit court, that court expressly declined to review it, determining, instead, that the appellant lacked standing to appeal. The issue resolved in *Treat Fitness* was not waiver or estoppel but whether an assumption can occur by conduct rather than by a timely motion to assume. In fact, the Ninth Circuit, from which *Treat Fitness* emanates, has never determined whether waiver and estoppel are or are not available to prevent lease forfeitures. *See Turgeon v. Victoria Station Incorporated (In re Victoria Station Incorporated),* 840 F.2d 682, 684–85 (9th Cir.1988) ("As the Debtor's motion to assume was timely filed and as the court is not restricted by section 365(d)(4) in deciding whether to grant or deny the motion to assume, it is not necessary for us to consider whether waiver or other equitable remedies affect the operation of that statute.")

This court has previously had occasion to consider whether principles of waiver and estoppel are available to override the forfeiture which would otherwise occur pursuant to section 365(d)(4). *See In re Fosko Markets, Inc.,* 74 B.R. 384 (Bankr.S.D.N.Y. 1987), *stay pending appeal denied,* No. M–47 (S.D.N.Y. June 22, 1987). There, following Judge Buschman's lead in *In re T.F.P. Resources, Inc.,* 56 B.R. 112, 115 (Bankr.S.D.N.Y.1985), we concluded that prior law concerning waiver and estoppel was still good law and that "there are unusual cases where the landlord may be deemed to have waived or be estopped from asserting the rejection by operation of law." 74 B.R. at 388. The judges in this district have consistently adhered to this same view. *See BSL Operating Corp. v. 125 East Taverns, Inc. (In re BSL Operating Corp.),* 57 B.R. 945, 951 (Bankr.S.D.N.Y.1986). Judges in other districts agree. *See, e.g., In re Lew Mark Cleaners Corporation,* 86 B.R. 331, 335, 17 Bank.Ct.Dec. 870, 873, (Bankr.E.D.N.Y.1988) ("If waiver was not applicable, even in extreme circumstances, harsh results are conceivable. One could imagine the inequities if a landlord accepted rental payments from a debtor/lessee for years during the pendency of a Chapter 11 reorganization, only to pull the rug out from under the debtor if the market value of the lease appreciated. The landlord would essentially reap a windfall and would have all the benefits of the bargain with the ability to terminate the contract at any time."); *Pier 5 Management Co., Inc. v. Occoquan Riverfront Partnership (In re Pier 5 Management Co., Inc.),* 83 B.R. 392, 394 (Bankr.E.D.Va. 1988); *In re J. Woodson Hays,* 69 B.R. 303, 308–09 (Bankr.M.D.Fla.1987) (Paskay, J.); *In re Southern Motel Associates, Ltd.,* 81 B.R. 112, 117 (Bankr.M.D.Fla.1987) (Proctor, J.). In a similar vein, the Eleventh Circuit in *Ranch House of Orange–Brevard, Inc. v. Gluckstern (In re Ranch House of Orange–Brevard, Inc.),* 773 F.2d 1166 (11th Cir.1985), determined that doctrines of waiver and estoppel are available

as a matter of law where a lease has been deemed rejected pursuant to a confirmed plan of reorganization.

As we observed in *In re Westview 74th Street Drug Corp.,* 59 B.R. 747, 753 (Bankr.S.D.N.Y.1986), the courts do not favor forfeitures. *See Finn v. Meighan,* 325 U.S. 300, 301, 65 S.Ct. 1147, 1149, 89 L.Ed. 1624 (1945); *Queens Boulevard Wine & Liquor Corp. v. Blum,* 503 F.2d 202, 204 (2d Cir.1974); *Realties 1430 v. Slaner (In re The Duplan Corporation),* 473 F.Supp. 1089, 1091 (S.D.N.Y.1979). With these cases as a backdrop, we believe that those courts err which dismiss out of hand waiver and estoppel recognized under prior law to preclude forfeitures. *See, e.g., In re Senioris Enterprises, Inc.,* 70 B.R. 79 (Bankr.N.D.Tex.1987); *In re BDM Corporation,* 71 B.R. 142, 145 (Bankr.N.D.Ill. 1987); *In re OK KWI Lynn Candles, Inc.,* 75 B.R. 97, 99–103 (Bankr.N.D.Ohio 1987); *In re Re–Trac Corporation,* 59 B.R. 251, 257 (Bank.D.Minn.1986).

### III.

We turn, therefore, to consideration of whether waiver or estoppel can save this lease from forfeiture. A waiver is usually defined as an intentional relinquishment of a known right. *Fosko,* 74 B.R. 384, citing *Hadden v. Consolidated Edison Co. of New York, Inc.,* 45 N.Y.2d 466, 469, 382 N.E.2d 1136, 410 N.Y.S.2d 274 (1978); *Dooley v. Weil (In re Garfinkle),* 672 F.2d 1340, 1347 (11th Cir.1982). The elements necessary for a waiver are (1) the existence at the time of the waiver of a right, privilege, advantage or benefit; (2) the actual or constructive notice thereof; and (3) the intention to relinquish such right, privilege, advantage or benefit. *Garfinkle,* 672 F.2d at 1347.

There is no controversy over satisfaction of the first element of waiver. After the sixty day period had terminated, there existed a right for the Lessor under section 365(d)(4) to force THW to surrender the premises. The Lessor claims however, that it had no knowledge of its statutory rights under 365(d)(4) and that the second element necessary to show waiver is therefore lacking. The argument is meritless. Unlike *Fosko,* where the landlord was not scheduled as a creditor but virtually immediately upon learning of the bankruptcy and before accepting any further payments on the lease moved to have the lease deemed rejected, the Lessor here was fully aware of the debtor's bankruptcy. The fact that the Lessor knew it was dealing with a chapter 11 debtor placed it on notice that its rights and duties in relation to that debtor would be altered. *Cf. In re Carolina Sales Corporation,* 45 B.R. 750, 755 (Bankr.E.D.N.C. 1985). The actual notice of the debtor's bankruptcy constructively imputes the knowledge of the Code and its provisions to the Lessor.

The third element is a maelstrom of controversy. In determining whether a lessor has waived a forfeiture provision in a lease, the court must ascertain whether there is by the landlord "conduct evidencing an intent to treat the lease as continuing rather than as terminated." *BJM Realty Corp. v. Ruggieri,* 326 F.2d 281, 282 (2d Cir.1963), citing *650 Madison Avenue Corp. v. Wil–Low Cafeterias (In re Wil–Low Cafeterias),* 95 F.2d 306 (2d Cir.), *cert. denied* 304 U.S. 567, 58 S.Ct. 950, 82 L.Ed 1533 (1938). This requires an analysis of the facts of each case. *Fosko,* 74 B.R. at 389; *Lew Mark Cleaners Corporation,* 86 B.R. at 334–35, 17 Bankr.Ct.Dec. at 873.

In *Fosko* we acknowledged a line of cases holding that acceptance of rent can never constitute a waiver. But we rejected that line in favor of *T.F.P. Resources,* 56 B.R. 112, stating "we can envision cases where the acceptance of payments due under the lease could, in tandem with other facts, constitute a waiver." 74 B.R. at 389. This case is illustrative of precisely that to which we referred. The Lessor had actual knowledge of the reorganization proceedings initiated by THW. For 14 months after the chapter 11 petition was filed, the Lessor accepted rent payments. It did not move to lift the stay, have the lease declared terminated or for other similar relief. Nor did it tell THW that it considered the lease terminated, notwithstanding

THW's requests to resolve whether an extension or buyout would occur.

This case is also distinguishable from *BSL*, 57 B.R. 945, where the debtor claimed that the lessor waived section 365(d)(4) because the lessor accepted a tender of rent. The court viewed the facts differently, finding that the monies were deposited without the lessor's knowledge and that the tender was actually accepted by the superintendent, who was not an authorized agent of the lessor. In the absence of a clear acceptance of the monies, the court held, no waiver could have taken place. Here, the acceptance of 14 months' rent was unconditional and knowing. To ignore the Lessor's conduct would permit the very evil suggested by Judge Duberstein in *Lew Mark Cleaners Corporation*, 86 B.R. at 334–35, 17 Bankr.Ct.Dec. at 873. We conclude that the Lessor waived the forfeiture provisions of section 365(d)(4). There is accordingly no need to reach the issue of estoppel.

### IV.

■ The final question is whether the lease may be assumed. To achieve this result THW must cure the one month's default thereunder, compensate the Lessor for any pecuniary loss arising from the default and provide adequate assurance of future performance under the lease. 11 U.S.C. § 365(b)(1). In assessing adequate assurance courts have consistently been guided by whether the debtor has the wherewithal to pay the rent reserved. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir.1985); *In re R.H. Neil, Inc.*, 58 B.R. 969, 971 (Bankr. S.D.N.Y.1986); *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr.S.D.N.Y.1986). The test is not one of guaranty but simply whether it appears that the rent will be paid and other obligations met. *Westview*, 59 B.R. at 754.

The default is negligible and the history of payment impeccable, but the unrefuted testimony establishes that this debtor has sustained mounting losses since the filing of its petition, leading us to question whether the rent will be paid in the future. *Cf. Westview*, 59 B.R. 747 (the debtor's monthly operations were marginally profitable during bankruptcy and sales were on the increase). No testimony was adduced respecting the debtor's financial prognosis. Nonetheless, the debtor argues that it can and will cut costs and turn its business around.

Although we have some lingering doubt today as to adequate assurance of future performance,[2] we believe there is cause for an extension of time to assume or reject. *See In re Wedtech Corporation*, 72 B.R. 464, 471–72 (Bankr.S.D.N.Y.1987). THW has consistently paid its pre-petition and post-petition rent. The lease is its primary asset and is central to reorganization. There is no evidence that the Lessor is being damaged by THW's occupation of the premises so long as the rent is paid. Recapture of the premises by the Lessor would give it a windfall. Accordingly, conditioned on the timely payment of rent the debtor is granted an extension of 90 days from entry of this order to show an improvement in its financial position, implementation of cost savings measures and the like. If THW is able to demonstrate adequate assurance of future performance it may move before the expiration of the 90 days to assume the lease. Conversely, if the rent is not paid, the Lessor may move to terminate the extension of time herein granted.

IT IS SO ORDERED.[3]

---

2. In *Westview*, the debtor offered as additional protection a security deposit of two months' rent. No such offer was made here. In view of the financial posture of this debtor, we decline to simply allow assumption at this time requiring the curing of defaults and the posting of a security deposit.

3. Inasmuch as the U.S. Trustee's motion to convert this case from chapter 11 to chapter 7 was predicated primarily upon the lease dispute, and, further, since the testimony adduced on the conversion motion suggests that the business will improve and the expenses will be decreased, we deem it appropriate to adjourn the

motion in tandem with the 90 day extension of the time to assume or reject the lease.