**In re Farzad ESMIZADEH, Debtor.**

No. 899–84570–478.

United States Bankruptcy Court,
E.D. New York.

Jan. 24, 2002.

Robert L. Pryor, Esq., By Pryor & Mandelup, LLP, Westbury, NY, Chapter 7 Trustee.

Bracken, Margolin & Gouvis, By John P. Bracken, Esq., Islandia, NY, for Ingrid Hansen.

Daniel Marsh, Marvin Marsh and Burton Marsh, Huntington, NY.

Sobel & Kelly, P.C., By Curtis Sobel, Esq., Huntington, NY.

### DECISION AND ORDER DENYING MOTION BY TRUSTEE TO ASSUME AND ASSIGN UNEXPIRED LEASE OF NON–RESIDENTIAL REAL PROPERTY PURSUANT TO 11 U.S.C. § 365(a) and (f)

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion made by Robert L. Pryor, the Chapter 7 Trustee, to assume and assign a non-residential real property lease between Farzad Esmizadeh (the Debtor) and Daniel, Burton and Marvin Marsh (collectively, the "Landlord") for property located at 335 New York Avenue, Huntington, New York (the "Premises") (the "Assumption Motion"). Although the Landlord has not filed an objection to the motion made by the Chapter 7 Trustee, Ingrid Hansen, who has been making rental payments and who is the sole stockholder of the entity inhabiting the Premises since at least March, 1996 strongly objects to the granting of the Assumption Motion. Based on the overall facts and memoranda of law and all pleadings in this case, the Court denies the Assumption Motion. The following constitutes the Court's findings

of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

## Background

In July, 1992, the Landlord and the individual Debtor entered into a lease for the Premises (the "Lease"). The Lease term was for five years, and was set to expire on August 14, 1997. Paragraph 51 of the Lease provided the Debtor with the option to extend the term of the lease for an additional five years by notifying the Landlord in writing, no later than 6 months prior to expiration of the term of the Lease. Paragraph 47 of the Lease provides:

Notwithstanding anything herein to the contrary, the Tenant may, provided they are not in default of any of the terms, covenants and conditions contained in this lease, have the right to assign this lease to a New York corporation in which the Tenants herein are the holders of a minimum of 51% of the stock of the said corporation and upon any assignment of aforesaid, the Tenant shall deliver to the Landlord an exact duplicate copy of such assignment which shall be expressly subject to all of the terms, covenants, conditions and provisions of this lease duly executed and which same shall further contain an assumption agreement by such assignee of all of the terms, covenants, conditions and provisions of this lease and upon compliance with the aforesaid, the Tenants herein shall be relieved of any further liability under this lease.

At the time the Debtor entered into this lease, and thereafter, the Debtor operated a restaurant under the name Tortilla Grill Huntington, Inc. ("TGHI") out of the Premises. As of the date of the Lease, the Debtor was the sole shareholder of TGHI. ("TGHI"). The Debtor was also an officer and director of TGHI at the time. There is no evidence that the Debtor ever as-signed the lease to TGHI pursuant to the lease terms as recited above.

Paragraph 9 of the Lease provides:

If this lease be assigned, or if the de-mised premises or any part thereof be underlet or occupied by anybody other than the Tenant the Landlord may collect rent from the assignee, under-ten-ant or occupant, and apply the net amount collected in the rent herein reserved, and no such collection shall be deemed a waiver of the covenant herein against assignment and underletting, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of the Tenant from the further performance by the Tenant of the covenants herein contained on the part of the Tenant.

Despite the fact that the Debtor individually is the lessee under the Lease, TGHI had made the rental payments to the Landlord from 1992 to the date of this motion.

On or about October 1992, Ms. Ingrid Hansen ("Hansen") became an employee of TGHI. At some point, the Debtor and Hansen became paramours. On or about February 7, 1996, the Debtor and Hansen entered into an agreement for Hansen to purchase all of the stock of TGHI. The parties entered into a Stock Purchase Agreement which states that the Debtor agrees to sell his fifty shares of stock of TGHI (all of the corporate shares) to Hansen for $3,000. The Stock Purchase Agreement further recites that at the closing, the Debtor was to deliver his letter of resignation as officer and director of TGHI. Hansen represents that she was under the impression that the Lease was an asset belonging to TGHI and the transfer of the stock included an assignment of the Lease. Hansen further represents that at the time of this transaction, she did not have any independent counsel, but re-

lied on Debtor's counsel to represent both parties.

After the closing took place, the Debtor continued to work as an employee of TGHI, and TGHI by Hansen continued to make the rent payments to the Landlord. The Debtor had negotiated an extension of the Lease for the Premises, resulting in the entry of a Modification of Lease dated October 7, 1997, which extended the Lease term for an additional ten years, with an increase in monthly rent. The Debtor signed the Modification of Lease as tenant, adding "President, Tortilla Grill Huntington" under the signature line. At the time the Modification of Lease was entered into, the Debtor was not the President of TGHI, nor was he a shareholder of TGHI. Some time thereafter, there was a falling out between the Debtor and Hansen, and the Debtor opened his own restaurant not far from TGHI.

The Trustee has an adversary proceeding pending seeking to set aside this transfer to which Hansen has raised several defenses. However, the matter before the Court is separate from that adversary proceeding in that the only issue raised herein is whether the Trustee, who never paid any funds to the Landlord since 1999, the date of the filing of this petition, and who never sought to extend his time to assume or reject the Lease pursuant to Section 365 of the Bankruptcy Code, may now assume and assign the Lease on behalf of the estate.

### Facts

1. On or about June 1, 1999, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. As of the petition date, the Debtor was employed by TGHI, which was operating out of the Premises, but he held no stock interest in TGHI, nor was he an Officer or Director of TGHI. The Debtor failed to list his claimed leasehold interest pursuant to the Lease and Modification of Lease in Schedule G, Statement of Executory Contracts and Unexpired Leases. Schedule B did not disclose the existence of any leases to which the Debtor was a party.

2. On September 14, 1999, the Trustee obtained an order authorizing the examinations of Hansen and the Debtor pursuant to Bankruptcy Rule 2004. The Trustee first became aware of the existence of the Lease during the Trustee's examination of the Debtor on November 19, 1999.

3. Some time in December 1999, the Debtor and Hansen terminated their romantic relationship, and shortly thereafter, the Debtor's employment by TGHI ended.

4. The Debtor opened up a competing restaurant in the vicinity of the Tortilla Grill restaurant, serving virtually the same fare.

5. By letter dated December 29, 1999, unbeknownst to the Trustee, counsel to the Debtor notified counsel to Hansen and TGHI that the Debtor was terminating a "month-to-month" tenancy relationship between the Debtor and TGHI as of February 1, 2000. On December 30, 1999, the Debtor filed an amendment to Schedule G to add the Lease and Modification of Lease between the Debtor and the Landlord. The Debtor made no corresponding amendments to Schedule B, the list of assets.

6. By letter dated January 21, 2000, counsel to Hansen and TGHI responded to the letter dated December 29, 1999 from Debtor's counsel, which letter was forwarded to counsel to the Trustee and the Office of the United States Trustee. Counsel to TGHI and Hansen advised Debtor's counsel that there was no sublease between the Debtor and TGHI, and TGHI had been the sole occupant of the Premises and has paid all rental obligations to the Landlord. Further, counsel

to TGHI and Hansen advised that due to the filing of the Debtor's petition on June 1, 1999, the Trustee's time to assume or reject the Lease had expired 60 days after the petition date, and any interest the estate had in the Lease was deemed rejected. In the letter, counsel to TGHI and Hansen requested comments from the Trustee given that the Debtor's actions could have no conceivable benefit to the Debtor's estate and the Debtor appeared to be pursuing actions which were "antithetical" to the Debtor's status as a Chapter 7 Debtor.

7. It is clear that as of at least December 30, 1999, the Trustee was made aware of the Debtor's interest in this lease. There is no evidence to indicate that the Trustee took any action with regard to the estate's interest in the Lease immediately after the deposition of the Debtor or after receipt of the letter dated January 21, 2000 from counsel to Hansen, or after the Debtor filed his amendment to his schedules on December 30, 1999.

8. On May 8, 2000, at least five months after first learning of the Lease, the Trustee commenced an action against the Debtor seeking to bar his discharge pursuant to Section 727(a)(4) of the Bankruptcy Code for failure to list the Lease and Modification of Lease, as well as an ownership interest in a restaurant located in Great Neck, New York. Pursuant to an order of the Court, default judgment was entered against Debtor and his discharge was denied.

9. On January 8, 2001 the Trustee commenced an adversary proceeding against Hansen, seeking to recover the transfer of shares of stock in TGHI from the Debtor to Hansen as an alleged fraudulent transfer (the "Fraudulent Conveyance Action"). At some point, the parties commenced negotiating a settlement of the Fraudulent Conveyance Action, and an offer was made by Hansen to settle the adversary proceeding for a specified amount.

10. By letter dated February 26, 2001, counsel to the Debtor, not the Trustee herein, issued another notice of termination of the Lease, purporting to terminate TGHI's tenancy as of March 31, 2001, post-petition. The Court believes that the Debtor and his counsel mistakenly believed that the leasehold interest was property retained by the Debtor. The Court makes clear that any interest the Debtor may have had in the Lease as of the date of filing became property of the estate.

11. On March 30, 2001, Ingrid Hansen and TGHI filed an order to show cause in the Supreme Court of the State of New York, Suffolk County, seeking a stay pending a hearing on a preliminary injunction enjoining the Debtor and the Landlord from terminating TGHI's and/or Hansen's tenancy at the Premises. The court granted a stay precluding the Debtor and the Landlord from terminating TGHI's and/or Hansen's tenancy at the premises pending a determination of the request for a preliminary injunction. The Debtor opposed the requested relief, and on June 15, 2001, the court issued a memorandum decision denying the request for a preliminary injunction, holding that based on the evidence before the court, the Debtor appeared to be the tenant under the Lease. Therefore, Hansen's claims of lease interference were questionable and her claims resting on such concept did " not appear likely to be successful at trial." The court also found that Hansen failed to demonstrate irreparable harm in the event the preliminary injunction was not granted, which failure was also fatal to her request. The Court further directed the appearance of all counsel and parties to that proceeding, including the Landlord, at a conference scheduled for June 28, 2001.

12. By letter dated June 26, 2001, counsel to the Landlord represented that the Landlord has no interest in the outcome of the proceeding so long as rent continues to be paid, and the Landlord will abide by whatever determination a court of competent jurisdiction makes. Further, counsel to the Landlord requested that their appearance at the court hearing be excused. The Court finds that the Landlord has, to this date, not taken a position as to any parties' legal rights.

13. During all of this time, the Trustee failed to take any action on behalf of the estate to secure its interest in the leasehold. The Trustee might never have taken any action with regard to the estate's interest in the Lease had the Debtor not commenced an action on July 3, 2001 in Suffolk County District Court seeking to evict TGHI, and asserting that the Lease was his asset.

14. On July 6, 2001, counsel to Hansen advised counsel to the Trustee that the Debtor had filed the notice of petition in state court. In that letter, counsel to Hansen advised counsel to the Trustee that in his opinion, the Debtor's estate, not the Debtor personally, held title to the Lease, but the decision rendered by Judge Lifson with regard to the denial of Hansen's request for a preliminary injunction "may be of some relevance." Counsel to Hansen further stated that Hansen was willing to increase her offer to settle the litigation commenced by the Trustee, but an "Order of the Bankruptcy Court adjudicating ownership of the lease would be a significant factor." Counsel to Hansen also requested a letter in writing in response, in order to obtain a stay in the landlord-tenant action commenced by the Debtor.

15. Thereafter, counsel to the Trustee informed the Suffolk County District Court of the automatic stay and on November 1, 2001, over two years and four months after the Debtor's petition was filed, the Trustee filed this Assumption Motion. The Trustee served the Assumption Motion upon the Debtor, counsel to the Debtor in the Landlord/Tenant action, the Landlord and counsel to Ms. Hansen. Pursuant to the Assumption Motion, the Trustee is seeking authorization to assume and assign the Lease to Amir Moussavian for $23,000, subject to higher and better offers.

16. The Landlord has not filed a response to the Assumption Motion, and has not appeared in this proceeding. Similarly, the Debtor has neither filed a response to the Assumption Motion nor has the Debtor appeared at any of the hearings held on the Assumption Motion.

17. Hansen opposes the Assumption Motion claiming that the Lease was deemed rejected by operation of law, and claiming that she may have an equitable interest in the Lease due to the events occurring in connection with the entry into the Stock Purchase Agreement and the conduct of the parties thereafter, including the fact that TGHI has made all rent payments at least from the petition date.

18. Hansen has filed an Amended Answer and Counterclaims in the Fraudulent Conveyance Action to assert (i) that a *de facto* assignment of the Lease to TGHI took place based on the parties' conduct, (ii) a request for reformation of the Stock Purchase Agreement to include transfer of the Lease to TGHI, (iii) a claim for constructive trust to prevent the Debtor from unjustly enriching himself based on their prior relationship, the Debtor's promise to transfer use of the Premises to Hansen, their mutual mistake in connection with the Stock Purchase Agreement or the Debtor's fraudulent conduct and (iv) rejection of the Lease by the Trustee as a matter of law.

19. At the hearing held on November 15, 2001, the Court heard oral argument and found that Hansen is a party in interest to this proceeding with a right to file objections to the Assumption Motion. The Court requested that the parties brief the issue of whether the Trustee has the right to assume and assign the Lease after the sixty day period has expired, where the Landlord has taken no position on the merits of the relief requested.

## Discussion

The Trustee asserts that only Hansen has objected to the Assumption Motion and that Hansen has no standing to argue that the Trustee's right to assume and assign the Lease was terminated by operation of law. According to the Trustee, only the Landlord has standing to make such argument in opposition to the Assumption Motion. Even if the Court finds that Hansen has standing to make these arguments, the Trustee claims that the Landlord has waived its right to argue that the Lease was rejected as a matter of law by accepting rent from Hansen post petition. As a result of the waiver, no party may argue that the Lease was rejected by operation of law. With regard to Hansen's argument that she has some sort of equitable claim to the Lease, the Trustee states that these arguments are barred by *res judicata* as well as the "Rooker–Feldman" doctrine. The Trustee bases his arguments on the fact that the Order of the Supreme Court of the Third District, Suffolk County denied Hansen's request for a preliminary injunction to prevent the Debtor, Mr. Esmizadeh, from terminating Hansen's tenancy in the Premises. The Court rejects each of the Trustee's arguments.

### 1. *Standing of Hansen to Object to Assumption Motion*

Despite the Trustee's failure to take the appropriate actions in this case, the Trustee asserts that Hansen lacks standing to object to the Assumption Motion as she is not the Landlord, and she is estopped from arguing that she may have equitable ownership claims regarding the Lease based on her prior arguments made in state court. The Court will first address the standing issue.

▪ The Court does not need Hansen's opposition papers to find that the Trustee has not complied with the timely requirements for assumption and assignment of the Lease. The issue regarding standing is whether Hansen can assert that she may have an equitable interest in the Lease which a court of competent jurisdiction has yet to rule on. Standing of a party to appear in and object to a motion is a threshold inquiry as it is jurisdictional in nature. *In re Balanced Plan, Inc.*, 257 B.R. 921, 923 (Bankr.W.D.Mo.2001) (citing *Gordon v. Basroon (In re Plaza Mortgage and Fin. Corp.)*, 187 B.R. 37, 40 (Bankr. N.D.Ga.1995)). In order to have standing, a party must have a "personal stake in the outcome of the controversy and suffer, or be threatened with, some actual injury." *Rion v. Spivey (In re Springer)*, 127 B.R. 702, 705 (Bankr.M.D.Fla.1991). The Court also agrees with the Bankruptcy Court in *In re Verdi*, 241 B.R. 851, 859 (Bankr. E.D.Pa.1999) (citations omitted), in which the court stated:

[W]e are rarely receptive to defenses based on lack of standing .... If a party believes itself affected by some event enough to take the trouble to raise it as an issue, it can usually be assumed that that party has a sufficient interest in the issue to be held to have standing to assert it. "[W]e are very reluctant to allow standing to become a means to avoid deciding difficult substantive issues put before us." ...

With these considerations in mind, the Court turns to the constitutional requirements and prudential considerations to be analyzed. To satisfy constitutional requirements, (1) Hansen must have suffered actual injury or been threatened with injury, (2) the injury must be traceable to the objectionable conduct, and (3) the relief requested must be likely to redress the injury. To satisfy prudential considerations, (1) Hansen must be asserting her own rights and not the rights of a third party, (2) Hansen's injury must be particular to herself and not just a generalized grievance, and (3) Hansen's injury must fall within the zone of interests the statute is designed to protect.. *Rion v. Spivey*, 127 B.R. at 705–705 (citations omitted).

█ In this case, if the Assumption Motion is granted, then any claims Hansen has to the leasehold will be foreclosed as to her as the Trustee will be empowered to assume and assign the Lease to Mr. Moussavian. In order to authorize the assumption and assignment of the Lease, the Court must make a finding that the Lease, as of this time in the case, is property of the Debtor's estate. Hansen asserts in her adversary proceeding pending before the Court that the Lease was intended to be transferred to her pursuant to the Stock Purchase Agreement, and that she is the *de facto* owner of the Lease. This issue has never been fully resolved, as the New York Supreme Court, Suffolk County's denial of Ms. Hansen's motion for a preliminary injunction to prevent Mr. Esmizadeh from terminating Hansen's tenancy in the Premises does not constitute an adjudication on the merits of the issues raised. *J.A. Preston Corp. v. Fabrication Enterprises, Inc.*, 68 N.Y.2d 397, 402, 502 N.E.2d 197, 199, 509 N.Y.S.2d 520, 522 (1986) ("[a] preliminary injunction, even when issued after an evidentiary hearing, depends upon probabilities, any or all of which may be disproven when the action is tried on the merits...."). Clearly, there can be no finding that a court of competent jurisdiction has made a decision as to the ownership interests Hansen may have in and to the Lease. A court making such determination must analyze the Lease and its provisions and take testimony from the parties in question. This Court shall not undertake this endeavor at this time as this issue is not before the Court. However, Hansen has asserted material facts which may result in reformation of the Stock Purchase Agreement, or recognition of an equitable claim in and to the Lease. Therefore, her rights will be adversely affected by the granting of the Assumption and Assignment Motion before she has her day in Court. It would result in an irreparable injury to her, as it would remove any right to the lease of the premises where her restaurant operates. It would summarily deny her the right to have a court of competent jurisdiction determine her rights in and to the Lease.

█ The Court finds that Hansen is asserting her rights as the tenant of the Premises with an alleged equitable leasehold ownership interest in the Premises. The potential injury Hansen asserts is her own and peculiar to herself or her corporation as the tenant of the Premises who has paid rent to the Landlord for the last several years. If the Assumption Motion is granted, Hansen's rights in and to the Premises will be extinguished. Contrary to the Trustee's assertions, Hansen is not seeking to assert the rights of the Landlord, as only the Landlord can assert its rights as owner of the Premises. It is unclear what the Landlord's position may be. As of this time, in this proceeding, the Landlord has chosen not to take a position.

As a party who will clearly be affected by this Court's action in the Trustee's

motion before the Court, she has standing to be heard.

■ With regard to the zone of interest the statute in question is designed to protect, the Court recognizes that Sections 365(d)(3) and (d)(4) were enacted with the protection of the landlord in mind. However, Hansen falls within the "zone of interest" the statute was meant to protect as she, not the Debtor or the Trustee, fulfilled the Trustee's obligations to the Landlord, and she is entitled to be heard, not in place of the Landlord, but in addition to any argument the Landlord could raise. Hansen is asserting her rights as a party with an alleged interest in the Lease. If a party opposes a trustee's motion to assume and assign a lease by asserting that the debtor's estate may no longer have an interest in the lease or that the estate's interest in the lease may not have been adjudicated by a Court of competent jurisdiction, then this party has the requisite standing to object to such a motion.

## 2. *Compliance with Section 365(d)(4) of the Bankruptcy Code*

A critical issue for this Court to decide is whether, as a matter of law, the Assumption Motion is timely. 11 U.S.C. § 365(d)(4) provides in relevant part as follows:

> ... in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60 day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property *to the lessor.* (Emphasis added).

Pursuant to Bankruptcy Rule 6006, the assumption of an unexpired lease is deemed a contested matter requiring a formal motion on notice pursuant to Bankruptcy Rule 9014. Bankruptcy Rule 9013 requires that a motion be made in writing, unless made during a hearing, and must state with particularity the grounds for the motion and the relief sought. Formerly, under the Bankruptcy Act of 1898, courts customarily found that conduct alone could establish the assumption of an executory contract. *In the Matter of Lew Mark Cleaners Corp.,* 86 B.R. 331 (Bankr. E.D.N.Y.1988) (other citations omitted). It is clear that Section 364(d)(4) was adopted to protect lessors from uncertainty regarding assumption and rejection of nonresidential leases and to ensure that issues surrounding assumption are handled expeditiously. Courts generally have held that the proper method of declaring an intention to assume a lease is to file a motion with the Court. *Id.* at 333. However, some courts recognize that an unequivocal act manifesting an intention to assume is sufficient to constitute assumption of the lease. *See In re Fosko Markets, Inc.,* 74 B.R. 384 (Bankr.S.D.N.Y. 1987) (Decisions finding that certain acts taken by trustee can manifest intention to assume lease for purposes of Section 365(d)(4)).

■ In this case, the various decisions discussing whether a motion must be made or whether a trustee's actions without a formal motion will suffice to find that the Trustee has preserved the estate's rights to the Lease are immaterial. It is undisputed that the Trustee failed to file a motion to assume or reject the Lease within either sixty days of the petition date, or at least within sixty days of discovery of the Lease's existence on November 19, 1999, and that the Trustee did not express to the Landlord any clear intention to assume the Lease within any of the sixty day periods. In fact, the Trustee never paid

any rent or expressed any interest in the Lease until over one and one-half years after the Trustee discovered the existence of the Lease. Therefore, as a matter of law, the Trustee failed to assume the Lease in a timely manner. The Court does not need to rely on Hansen's opposition to the requested relief to find that the Trustee's motion is not timely. The Trustee has made no rental payments or made any effort to extend his time to assume and assign this lease, or even indicated his intention to the Landlord to preserve any rights the Trustee may have had in and to the Leasehold.

Section 365(d)(4) of the Code clearly states that if the Trustee fails to act to assume or reject the lease within the statutory time period, the lease is deemed rejected by operation of law. *In re Damianopoulos*, 93 B.R. 3, 6 (Bankr.N.D.N.Y. 1988). The Landlord has no affirmative duty to seek Lease rejection upon the expiration of the 60–day period following the filing of the petition in bankruptcy as § 365(d)(4) of the Code states that the Lease is deemed rejected if the Debtor (or the Trustee) fails to move to assume the Lease within the 60–day period, and such rejection is self-executing. *Id.* at 7.

Upon a finding that the Trustee's right to assume the Lease has expired, the Lease reverts to the Landlord, and neither the Trustee nor Mr. Esmizadeh can assert any ownership interest in and to the Lease. *Anderson v. Elm Inn, Inc. (In re Elm Inn, Inc.)*, 942 F.2d 630 (9th Cir. 1991); *In re Damianopoulos*, 93 B.R. 3, 8 (Bankr.N.D.N.Y.1988) (citing, *inter alia, In re Fosko Markets, Inc.*, 74 B.R. at 390; *In re O.P. Held, Inc.*, 77 B.R. 388, 391 (Bankr.N.D.N.Y.1987)).

### 3. *Judicial Estoppel*

The Trustee argues that even if the Court finds that Hansen has standing to interpose objections to the Assumption Motion, she is precluded from arguing that the Lease is not property of the estate under the theory of judicial estoppel. Judicial estoppel occurs when a party, after assuming a certain factual position in a proceeding, attempts to assume the contrary position. *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46, (S.D.N.Y.1999) (other citations omitted). Judicial estoppel only applies where the party in question advanced a "clearly inconsistent position in a prior proceeding and that inconsistent position was adopted by the court in some manner, . . . perhaps, for example, by obtaining a judgment." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997). According to the Trustee, Hansen informed the Landlord Tenant Court that the Lease was property of the estate and property of the Trustee, and as a result, the Landlord Tenant Court stayed the continuation of the Landlord Tenant proceeding. However, the facts are that counsel to Hansen advised the Trustee of the Landlord Tenant action and indicated his legal position that the Lease "is currently with the Trustee," but the letter goes on to state that "the Order of the Bankruptcy Court adjudicating ownership of the lease would be a significant factor" in the parties' ongoing settlement discussions. It was the Trustee who requested that the matters pending before the Landlord Tenant Court be stayed as the Lease constituted property of the estate.

The Trustee's argument is fundamentally flawed for two reasons. First, Hansen's counsel was advancing his belief in a legal theory, not a fact. The Second Circuit has declined to extend the doctrine of judicial estoppel to bar the taking of inconsistent positions based on legal theories. *See Seneca Nation of Indians v. State of New York*, 26 F.Supp.2d 555 (W.D.N.Y.1998), *aff'd*, 178 F.3d 95 (2d Cir.1999), *cert. de-*

*nied,* 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 662 (2000), citing *Bates v. Long Island Railroad Co.,* 997 F.2d 1028, 1037 (2d Cir.), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993) (District Court for the Western District of New York found no authority for broadening of the doctrine to include seemingly inconsistent legal positions). Second, the Landlord Tenant Court merely imposed a stay of the proceedings and made no determination of the parties' rights in and to the Lease. This is not the equivalent of Hansen receiving a favorable judgment from the Landlord Tenant Court after advancing certain facts to the Court which are inconsistent with the facts she is now asserting. Therefore, the doctrine of judicial estoppel does not bar Hansen's arguments in opposition to the Assumption Motion.

### 4. *Waiver of Right to Object to Assumption Motion*

The Trustee's final argument is that even assuming Ms. Hansen has standing, the Landlord has waived any right to argue that the Lease is deemed rejected based on the Trustee's failure to comply with the Bankruptcy Code requirements. The problem this Court must grapple with is that the Landlord has made no appearance in this matter, and in its only communication on this issue, the Landlord's counsel has merely indicated in a letter to the State Court that the Landlord's sole concern is that the rent is paid and that the Lease terms are performed. From this and from the fact that the Landlord has accepted rent from a third party during the pendency of the bankruptcy case and after passage of the deadline for the Trustee to assume or reject the Lease, the Trustee requests that the Court conclude that the Landlord has waived its rights in this proceeding. Courts have concluded that "there are unusual circumstances where the landlord may be deemed to have

waived or be estopped from asserting the rejection by operation of law." *In re Fosko Markets, Inc.,* 74 B.R. 384, 388 (Bankr. S.D.N.Y.1987) (citing *In re J. Woodson Hays, Inc.,* 69 B.R. 303 (Bankr.M.D.Fla. 1987)). In addition, it is well recognized that the courts do not favor forfeitures. *In re Westview 74th Street Drug Corp.,* 59 B.R. 747, 755 (Bankr.S.D.N.Y.1986) (*cited in In re THW Enterprises, Inc.,* 89 B.R. 351 (Bankr.S.D.N.Y.1988)).

The Trustee argues in his Supplemental Memorandum dated November 26, 2001, that "each and every Court in this Circuit that has heard this issue, has concluded that if a landlord accepts rent subsequent to the sixty day period set forth in Section 365(d), then the landlord waives his rights to claim at a later time, that the lease was rejected by operation of law." In his string cite of cases supporting this proposition, the Trustee cites to *In re Fosko, supra.* However, the *Fosko* decision states nothing of the sort. In the *Fosko* case, the Bankruptcy Court for the Southern District of New York found that the landlord's acceptance of rent after the sixty day period following the filing did not *per se* constitute waiver of the landlord's right to assert that the Trustee's time to assume the lease had expired. The Court reviewed the landlord's entire conduct, and held that no waiver took place because the landlord took action to have the lease terminated or to terminate the stay. The Court noted that in *In re T.F.P. Resources, Inc.,* 56 B.R. 112 (Bankr.S.D.N.Y. 1998), Judge Buschman found that acceptance of any payments under the lease after the lease is deemed rejected constitutes waiver. The Court in *Fosko* refused to adopt a universal application of the rule enunciated in *T.F.P. Resources,* and held that "courts are bound to sift all the evidence before determining whether or not a

waiver occurred." *In re Fosko,* 74 B.R. at 389.

Likewise, the Trustee's representation that the case *In the Matter of Lew Mark Cleaners Corp., supra,* stands for the proposition that a landlord's acceptance of rent after the lease is deemed rejected constitutes waiver is incorrect. In the *Lew Mark Cleaners Corp.* case, the Court specifically found that acceptance of one month's rent after the sixty day period during which the trustee must assume the lease does not constitute waiver in that case because the landlord took other actions in the case evidencing an intent to reject the lease.

The Trustee's argument that the Landlord has waived its rights because it accepted rent from a third party is also contrary to the Bankruptcy Code. Section 365(d)(3) of the Code provides:

> (3) the *trustee* shall timely perform all obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, .... The Court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, *but the time for performance shall not be extended beyond the 60—day period.* This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsections (b) or (f) of this section. *Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease under this title.* (Emphasis added).

The Trustee has not complied with this provision in the Bankruptcy Code. He has not made any payments to the landlord post-petition nor has he ever requested an extension of time to assume the lease.

Bankruptcy Code Section 65(d)(3) plainly states the acceptance of rent by the Landlord after the 60 days does not constitute a waiver of the Landlord's rights. The Trustee insists that the Landlord has waived his rights to a rejection of the estates interest therein. The Landlord did not accept any rent from the Trustee post-petition, and it does not appear that the Landlord and the Trustee had any interactions from which the Court could conclude that the Landlord has waived its rights against the Trustee.

To find that a waiver has taken place, the Court must conclude that the Landlord has intentionally relinquished a known right. *In re THW Enterprises, Inc.,* 89 B.R. 351, 357 (Bankr.S.D.N.Y.1998). The elements necessary for waiver are "(1) the existence at the time of the waiver of a right, privilege, advantage or benefit, (2) the actual or constructive notice thereof, and (3) the intention to relinquish such right, privilege, advantage or benefit." *Id.* (citing *Dooley v. Weil (In re Garfinkle),* 672 F.2d 1340 (11th Cir.1982)).

█ In the case before the Court, the Landlord has the right to assert that the Lease is rejected by operation of law, and has had notice at least as of December, 1999 that the Debtor had filed a petition under Chapter 7 of the Bankruptcy Code. However, the Court cannot find that the Landlord has intentionally relinquished any rights against the Debtor's estate where the Landlord has not accepted rent from the Debtor since at least the petition date, and the Landlord has not affirmatively indicated an intention to relinquish any of its rights in this case. In addition, the Court finds that equitable principles such as waiver are intended to be used to prevent a landlord from lulling a debtor into making rent payments post-rejection, and then "pulling the rug" out from under a debtor by asserting that the lease was

rejected earlier, which would amount to a windfall to the landlord. *See In re THW Enterprises, Inc.*, 89 B.R. at 355. In this case, the equities do not lie in favor of the Trustee. The Trustee has made no rental payments, and has made no attempt to assert an interest in the Lease save for this belated motion. To grant this motion would be tantamount to rewarding the Trustee for sloppy work on the back of Hansen's diligent payment of rent through the corporate entity occupying the Premises. But for her payment of rent, the Trustee would not even be in a position to make this motion and the Court cannot find waiver by the Landlord of its rights when the Landlord has merely held its rights in abeyance pending payment of rent by a third party.

The Trustee's failure to make rental payments to preserve its rights under the Lease is fatal to this motion. 11 U.S.C. § 365(b)(1) provides in relevant part as follows:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such lease or contract, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

The Trustee has not made one single rent payment, nor has the Debtor made the rent payments. Therefore, the Debtor is in default under the Lease. This Court shall not invoke equity if it " 'would violate the clear and precise mandate of a governing statute.' " *In re Fosko Markets, Inc.*, 74 B.R. at 388 (citing *In re J. Woodson Hays, Inc.*, 69 B.R. 303 (Bankr.M.D.Fla. 1987)). Clearly, the Trustee has violated the mandate to make rent payments to the Landlord under the Lease and pursuant to the Bankruptcy Code, and it would be inequitable to permit the Trustee to assume the Lease without using the estate's funds to cure all the post-petition payments that became due to the Landlord. The Trustee should not be able to use Hansen's payments to the Landlord for the cure requirement under Section 365(b)(1)(A) of the Bankruptcy Code without reimbursing Hansen for all rent payments made post-petition. Even if the Court permitted the Trustee to accept the offer it has received, it is not sufficient to repay Hansen for the money she paid to the Landlord.

### Conclusion and Order

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157.

2. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).

3. The Trustee has not timely complied with the statutory requirements of § 365(d)(3) and (4) of the Bankruptcy Code.

4. As a result of the Trustee's failure to comply with the provisions of § 365(d)(3) and (4) of the Bankruptcy Code, the Court finds that the estate's interest in and to the Lease was terminated as a matter of law, at the latest, 60 days after the Trustee first discovered the existence of the Lease.

5. Hansen has standing to object to the Assumption Motion.

6. No basis in equity exists to avoid the applicability of § 365(d)(4) of the Bankruptcy Code.

7. The Landlord has taken no action which would constitute a waiver of its rights under § 365(d)(4) of the Bankruptcy Code.

8. As a result of the termination of the Trustee's rights in the Lease, the Assump-

tion Motion cannot be granted and the Landlord retains the leasehold rights in and to the Premises pursuant to § 365(d)(4) of the Bankruptcy Code.

It is hereby ORDERED, for the reasons set forth above, that the Trustee's motion is denied in its entirety.